## IN THE MATTER OF PATRICK T. CLOONEY.

Suffolk.   October 5, 1988. — December 27, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Attorney at Law*, Disciplinary proceeding, Disbarment.

A single justice of the Supreme Judicial Court appropriately entered a judgment of disbarment where the findings and rulings of the Board of Bar Overseers fully supported its recommendation that a certain attorney be disbarred; where such discipline was necessary to deter future misconduct and to preserve public confidence in the bar; and where the judgment was not "markedly disparate" from those entered by single justices in similar cases. [657-658]

PETITION filed in the Supreme Judicial Court for the county of Suffolk on November 6, 1984.

The case was heard by *Abrams*, J.

*Patrick T. Clooney*, pro se.

*Bonnie H. MacLeod-Griffin*, Assistant Bar Counsel (*Daniel Klubock*, Bar Counsel, with her).

HENNESSEY, C.J.   This is an appeal from a judgment of disbarment entered, after hearing, by the order of a single justice of this court. S.J.C. Rule 4:01, § 8, as amended, 394 Mass. 1105 (1985). The respondent seeks reversal of the judgment, alleging, among other things, misrepresentation and prejudice on the part of several persons concerned in the conduct of the case against him. We affirm the judgment of disbarment.

The matter commenced with a petition for discipline filed by Bar Counsel before the Board of Bar Overseers (Board). The first two counts involved two elderly, impaired clients and alleged numerous violations of the canons of ethics and disciplinary rules. The third count alleged improper solicitation of defendants in criminal cases. A lengthy hearing was held before a hearing committee (committee) with a majority recommending disbarment and a minority recommending suspension. The

respondent appealed to a panel of the Board which, after a hearing, filed its report, in which the Board adopted the findings of fact of the committee and recommended the respondent be disbarred. The matter then came before the single justice on an information and record of proceedings. Bar Counsel joined the committee and the Board in recommending the sanction of disbarment.

The facts were found by the committee, adopted by the Board, and summarized by the single justice in her "Memorandum Concerning Judgment of Disbarment." Our examination of the record reveals that these findings were warranted by the evidence before the committee and Board.

The facts as to the first count of the petition are summarized as follows. The respondent performed legal services for one Marion Murphy. From approximately 1975, Mrs. Murphy's mental and physical condition deteriorated to a point where she was incapable of handling her affairs. This deterioration was so well known to the community that anyone dealing with her would be compelled to inquire as to her competence before doing business with her. During this period of Mrs. Murphy's incapacity, the respondent presented her with deeds to sign transferring title to her two parcels of residential property, without consideration, to the respondent. The respondent obtained a mortgage on the property in the amount of $5,000. Despite stating on the mortgage application that the property belonged to Mrs. Murphy, he did not use the proceeds for her benefit nor has he ever accounted for them. Subsequently, the respondent transferred the property to his wife and son.

Following an automobile accident on July 30, 1979, Mrs. Murphy was hospitalized for twenty months. She was diagnosed as suffering from anemia, Alzheimer's disease, and senile dementia. While she was in the hospital, the respondent presented her with another deed transferring, without consideration, certain real property which she owned to the respondent's wife. The deed reserved to Mrs. Murphy a life estate in the property. After receiving the signed deed, the respondent altered the date of execution so as to appear that the deed was

signed before Mrs. Murphy's accident. At no time did the respondent suggest to Mrs. Murphy that she retain independent counsel.

During this period, the respondent was appointed as Mrs. Murphy's conservator by the Probate Court, having failed to notify Mrs. Murphy's prospective heirs of the petition, or to disclose to the court the pendency of a prior petition by the hospital's attorney. While acting as conservator, the respondent failed to disclose Mrs. Murphy's life estate, failed to account for rental income and converted some of the rents to his own use. He also converted to his own use some of his ward's income from other sources, such as pension and social security checks which he cashed, and stored the cash in his own safe deposit box. As a result of removal proceedings brought by Mrs. Murphy's niece, the respondent was removed as conservator by the Probate Court and ordered to reconvey the residential property and to return all other property belonging to Mrs. Murphy to the successor conservator.

On May 20, 1984, the respondent was found in contempt by the Probate Court for continuing to cash Mrs. Murphy's checks, for failing to deliver her cash to his successor, and for continuing to visit her. He was sentenced to the Billerica house of correction and the sentence was suspended on the condition he tender certain payments to his successor. Although the respondent complied with the payment order, on which suspension of the sentence was conditioned, he did not reconvey the residential property, as required by the original order.

The second count of the petition involved the administration of an estate. The respondent was retained to assist the named executor, an elderly retired lawyer in failing health. When the executor was hospitalized for a possible stroke, the respondent obtained his signature authorizing payment of estate funds to the respondent and empowering him to sign checks on the executor's behalf. The respondent then paid himself $1,000 from the estate. The service which he rendered was obtaining the allowance of the will and the appointment of the executor. After returning home from the hospital, the executor discharged the respondent. On the same day he was notified of his dis-

charge, the respondent paid himself a fee of $5,500 from the estate. He refused to return any of the money despite a demand by the executor and a subsequent order of the Probate Court, until after a complaint for contempt was filed.

On the basis of these facts, the Board ruled that, in handling Mrs. Murphy's affairs, the respondent engaged in dishonesty, fraud, and deceit (DR 1-102 [A] [4]); that he engaged in business relations for his financial benefit with an incompetent client (DR 5-101 [A] and 5-104 [A]); that he attempted to cover up his wrongdoing, withheld information from the Probate Court and violated several of its orders (DR 1-102 [A] [5]); and that he failed to preserve the identity of his client's funds and to account for them (DR 9-102 [A]). The Board also ruled in count two that the respondent violated DR 9-102 (A) (2) by improperly withdrawing funds from the estate and by charging a clearly excessive fee in violation of DR 2-106 (A). See S.J.C. Rule 3:07, Canon 1, as appearing in 382 Mass. 768 (1981); Canon 2, as amended through 398 Mass. 1108 (1986); Canon 5, as amended through 397 Mass. 1214 (1986); and Canon 9, as amended through 397 Mass. 1211 (1986).

Finally, the Board found that the respondent offered no explanation for his behavior or evidence of any mitigating circumstances..and in fact continued to argue that he did not violate any rules of professional ethics in any of his actions. The Board concluded that the respondent's persistent assertions that he did nothing wrong in the handling of either matter demonstrated that he "continues to be unmindful of certain basic ethical precepts of the legal profession."

The single justice concluded that the findings and rulings of the Board fully support its recommendation that the respondent be disbarred, and that the evidence shows a "persistent and extended pattern of improper and unethical behavior," without even a rudimentary understanding or acknowledgement of the ethical behavior expected from a member of the bar. *Matter of McInerney*, 3 Mass. Att'y Discipline Rep. 143, 146 (1983). The single justice further concluded that, in determining whether disbarment is an appropriate disposition, the primary consideration is the effect on the perception of members of the public and members of the bar. "This is not a case where an attorney

engaged in an isolated course of improper conduct and has recognized the wrongfulness of his actions. In cases such as this, disciplinary measures are necessary to deter future misconduct on the part of all members of the bar and to preserve public confidence in the bar." *Id.* at 151.

We conclude that the judgment is to be affirmed. "Unlike nearly all other States, which require that judgment in bar discipline cases shall be by the full court, we in this Commonwealth use the single justice system in such cases. . . . Thus, review by the full court, on appeal from the single justice's judgment, must be by a standard which promotes even-handed results in such cases. Accordingly, we think that the full court, in reviewing any disciplinary decision, should inquire whether the judgment is markedly disparate from those ordinarily entered by the various single justices in similar cases." *Matter of Alter*, 389 Mass. 153, 156 (1983). Appraised by this standard, it is clear beyond argument that the judgment of disbarment was appropriate in this case. Compare, e.g., *Matter of McInerney*, 3 Mass. Att'y Discipline Rep. 143, 146 (1983).

*Judgment affirmed.*