## IN THE MATTER OF LOUIS M. SAAB.

Suffolk. September 14, 1989. - December 18, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Attorney at Law*, Disciplinary proceeding, Suspension. *Due Process of Law*, Attorney disciplinary proceeding.

In an attorney disciplinary proceeding arising from five alleged instances of misconduct, the respondent received constitutionally adequate notice that the hearing committee, in its recommendations for discipline, would consider the cumulative effect of all of the charges against him. [323-324]

In an attorney disciplinary proceeding arising from five alleged instances of misconduct, the hearing committee did not infringe the respondent's due process rights by considering the counts seriatim without making its findings as to each count before hearing the next. [324-325]

A single justice of this court appropriately considered the cumulative effect of five instances of misconduct by an attorney, as well as the attorney's prior disciplinary history, in ordering him suspended from the practice of law for eighteen months. [325-328]

In an attorney disciplinary proceeding, the hearing committee is the sole judge of the credibility of testimony. [328-329]

Expert testimony was neither necessary nor appropriate to establish an ethical violation by an attorney. [329]

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on January 10, 1989.

The case was heard by *Nolan*, J.

*Erik P. Lund (Cynthia C. Smith* with him) for the respondent.

*Nancy E. Kaufman*, Assistant Bar Counsel *(Daniel J. Klubock*, Bar Counsel, with her).

ABRAMS, J. Based on an information and record of proceedings filed in the county court, a single justice of this court ordered entry of a judgment suspending the respondent, Louis M. Saab, from the practice of law for eighteen

months. Saab appeals. He asserts that the suspension in his case is erroneous because it is (1) in violation of his constitutional rights; (2) "markedly disparate" from sanctions imposed in similar cases; and (3) the product of a hearing in which there were numerous errors. He asks that we vacate the suspension forthwith and order a de novo hearing. We conclude that there is no error. We affirm.

1. *Prior Proceedings.* Bar counsel filed a petition for discipline with the Board of Bar Overseers (board) on October 27, 1986. The petition contained five separate counts alleging misconduct in matters concerning four of the respondent's clients. In his answer, the respondent's counsel requested that "a hearing be held on all counts." Further, in a letter accompanying the answer, the respondent's counsel stated that "five days will be needed for a hearing of this matter. Also, I would request that each count be heard sequentially rather than en masse." At the pretrial conference, the parties and the hearing committee agreed to try each count sequentially and to conclusion before hearing the next count. Evidence as to aggravation or mitigation and a proposed disposition were to be offered after the cases had been heard.

The cases were heard sequentially as agreed. The hearing committee did not make findings of fact on each count before hearing the next count.[1] At the conclusion of the hearing on the last count, bar counsel moved to introduce the respondent's record of prior discipline for the purposes of discipline only. The respondent objected and requested a bifurcated hearing. The chairman of the hearing committee ruled that the panel could act "without prejudice if we accept the documents now, simply for purposes of inclusion in the record if, as, and when they become relevant to the level of discipline to be obtained. . . ." The record before us does not reflect an objection by the respondent to this ruling.

In February, 1988, the hearing committee issued its findings of fact, conclusions of law, and recommendations for

---

[1]Two counts were heard in May, 1987; one in June, 1987; and one case with two counts in July and October, 1987.

discipline. The hearing committee concluded that each count, on its own, would require a public censure "at most." Nevertheless, the hearing committee recommended, in light of the respondent's prior record of discipline and his "poor understanding of the ethical requirements imposed upon attorneys," that the respondent be suspended for two years, and that as a condition of reinstatement, the respondent take and pass the Professional Responsibility portion of the Massachusetts bar examination.

The respondent appealed the hearing committee's report to a panel of the board, raising on appeal for the first time the constitutional issues discussed below. He also presented letters attesting to his good character and reputation in the community. The panel accepted the evidence offered in mitigation. Nonetheless, the appeal panel affirmed the findings and conclusions of the hearing committee. The board voted on December 12, 1988, to file an Information with the single justice. On February 3, 1989, the single justice imposed a suspension of eighteen months. We affirm the judgment of the single justice.

2. *The hearing committee's findings of fact.* We summarize the findings of the hearing committee. See S.J.C. Rule 4:01, § 8, as amended, 394 Mass. 1108 (1985).

*Gilchrist.* On September 20, 1978, the respondent sold to Arlene Gilchrist a certain residential property he owned in Lowell. The respondent lacked marketable title to the property; among other title defects was a municipal lien on the property for unpaid property taxes. As part of the transaction, the respondent took back a mortgage for the full purchase price. The respondent acted as Gilchrist's attorney in these transactions. He never advised Gilchrist that there was a conflict, nor did he suggest to her that she obtain independent counsel. He failed to perform the services that independent counsel would normally perform, such as a title examination. Moreover, the respondent prepared and recorded

a deed for the property in which he recited nominal consideration, in violation of G. L. c. 183, § 6 (1988 ed.).[2]

Gilchrist fell behind in her mortgage payments. The respondent sent her a notice of foreclosure in October, 1981. He followed up his notice by calling her on December 10, 1981, and asking her to come to his office. When she arrived at his office, he advised her that she should refinance the property in order to preserve her credit rating. Under pressure from the respondent and from her husband, she agreed to refinance it.

The respondent presented her with papers to refinance the property through Karam Financial Services, Inc. The respondent was the president and sole stockholder of Karam, a fact he did not disclose to Gilchrist. He also served as Karam's attorney. Gilchrist executed a promissory note payable to Karam and a mortgage to secure the note. Gilchrist's monthly payments after the refinancing were to be almost $100 higher than her payments under the original mortgage.[3]

The respondent never furnished a statement to Gilchrist, as was required by G. L. c. 184, § 17B, indicating that his responsibility as attorney for the mortgagee (Karam) was to protect Karam's interests, not hers, and that she might wish to retain an attorney of her own to represent her in the transaction. Moreover, Gilchrist signed a disclosure statement listing charges incident to the refinancing. It included, among other items, a $350 charge for a title examination. Neither

---

[2]On the basis of these facts, the board ruled that the respondent violated S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4) and (6), as appearing in 382 Mass. 769 (1981) (conduct involving dishonesty, fraud, deceit, or misrepresentation; conduct adversely reflecting on fitness to practice law) (two violations); S.J.C. Rule 3:07, Canon 5, DR 5-101 (A) and DR 5-104 (A), as appearing in 382 Mass. 779 (1981) (conflict of interest; business relations with a client); S.J.C. Rule 3:07, Canon 6, DR 6-101 (A) (2) and (3), as appearing in 382 Mass. 783 (1981) (inadequate preparation; neglect); and S.J.C. Rule 3:07, Canon 7, DR 7-101 (A) (3), as appearing in 382 Mass. 784 (1981) (prejudice or damage to a client).

[3]Documents introduced at the hearing also indicate that the refinancing was at a higher interest rate than the original mortgage (16.5% compared with 10%).

the respondent nor Karam performed a title examination. The hearing committee determined that the respondent did represent to Gilchrist that there were no encumbrances on the title. This representation was false. The title was in the same defective state in which it had been at the time of the respondent's initial sale to Gilchrist, except that the respondent in the interim had paid the taxes he owed to the city of Lowell.[4]

*Borst.* In June, 1981, Stephen Borst retained the respondent to supervise an appeal of the judgment in his pending divorce from Carol Borst. The respondent requested, and Borst paid, a $350 retainer. Borst had been represented during the proceedings in the Probate Court by Attorney Daniel Connell, who filed a timely notice of appeal. Neither attorney had ever handled a domestic relations case on appeal.

The hearing committee found that, between June and October, 1981, the respondent did not monitor or assist Connell. Connell failed to perfect the appeal, which was dismissed on October 26, 1981, for failure to assemble the record. Connell filed a motion to vacate the order dismissing the appeal on November 2, 1981, and then withdrew from the case.

During the period from June to October, the respondent did not return Borst's telephone calls or respond to his letters. On November 25, 1981, the respondent finally wrote to admonish Borst, whose appeal had already been dismissed,

---

[4]The hearing committee found that these facts constituted violations of S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4), (5), and (6) (conduct involving dishonesty, fraud, deceit, or misrepresentation; conduct prejudicial to the administration of justice; conduct adversely reflecting on fitness to practice law); S.J.C. Rule 3:07, Canon 5, DR 5-101 (A), DR 5-104 (A), and DR 5-105 (A) (conflicts of interest; business relations with a client; conflicts among clients); S.J.C. Rule 3:07; Canon 6, DR 6-101 (A) (2) and (3) (inadequate preparation; neglect); S.J.C. Rule 3:07, Canon 7, DR 7-101 (A) (1), (2), and (3) (failure to seek a client's lawful objectives; failure to perform contracted services; prejudice or damage to a client).

The hearing committee also found that the respondent failed to provide Gilchrist with the required notice of right of rescission in accordance with the provisions of G. L. c. 140C, § 8 (as in effect on December 10, 1981). The hearing committee found that this omission resulted in additional violations of DR 1-102 (A) (4), (5), and (6).

that it was "imperative that you seek out an attorney . . . to perfect your appeal." The respondent estimated that this so-called appeal would cost $2,500.

After Borst's mother provided $2,500, the respondent entered an appearance and turned the matter over to an inexperienced young associate whom the respondent failed to supervise. The motion to vacate the order dismissing the appeal was denied on December 22, 1981; an appeal from the denial of the motion was dismissed after argument on May 13, 1983.[5]

*Kadir.* In November, 1983, Joseph and Teresa Kadir consulted the respondent for the purpose of recovering a deposit they had made to a contractor. The Kadirs paid the respondent $500, which they understood to be the total fee, at his request. There was no written memorandum concerning a fee arrangement.

The respondent successfully sued the contractor and recovered $6,383. He issued a check for $4,506 to the Kadirs and retained the balance, which amounted to roughly one third of the total recovery.[6] The hearing committee concluded that the respondent intended to handle the case on a contingent fee basis from the very beginning.[7] The respondent never

[5]The hearing committee found that the respondent's failure to monitor Connell's work and his failure to communicate with his client constituted violations of S.J.C. Rule 3:07, Canon 6, DR 6-101 (A) (1), (2), and (3) (incompetence; inadequate preparation; neglect). The hearing committee found that the respondent's failure to supervise and monitor his associate constituted additional violations of DR 6-101 (A) (2) and (3).

[6]The respondent arrived at the sum of $4,506 by remitting one half ($250) of the Kadirs' original $500 payment to them. Thus, including the $250 that he kept for himself of the original $500, he received one third of the total recovery.

[7]The respondent claimed he intended to charge the Kadirs on an hourly basis, which would have resulted in a fee, according to his estimate, of roughly 40% of the total recovery. Thus, he claims that he "capped" the fee at one third. The hearing committee found that this argument was not credible because the respondent kept no record of the time he expended on the case over the two-year period in which he had occasion to work on it. Accordingly, the committee found that the respondent violated S.J.C. Rule 3:05, as appearing in 382 Mass. 762 (1981) (requiring written contingent fee agreements); and S.J.C. Rule 3:07, Canon 2, DR 2-106 (A) and (C),

made an accounting, accurate or otherwise, to his clients concerning the disposition of the $500 they paid. He also failed to keep accurate records of these funds.[8]

*Valentin.* In November, 1984, Karen Valentin retained the respondent. In the course of representing Valentin, the respondent received two checks for personal injury protection (PIP) benefits on her behalf. The respondent disbursed part of the first check to Valentin and kept the rest in his clients' account, without disbursing any of it to the appropriate recipients.

After retaining another law firm in September, 1985, Valentin and successor counsel wrote to the respondent advising him that she had retained another firm and requesting that he forward her files to that firm. The respondent initially demurred and did not forward her files until February 21, 1986.

In the meantime, Valentin's funds languished in the respondent's clients' account. The respondent received a second PIP check in December, 1985, more than two months after he had been discharged. He kept the second check, uncashed, in the file. The hearing committee found that the delay in forwarding the files to successor counsel was unreasonable, could have affected Valentin's rights, and wrongly interfered with successor counsel's representation of Valentin.

The respondent did not forward the files or disburse funds from the $200 in his clients' account to Valentin's health care providers until February 12, 1986, after Valentin had complained to bar counsel about his conduct. When for-

---

as appearing in 382 Mass. 770 (1981) (requiring written contingent fee agreements; proscribing illegal fees).

[8]The respondent could account for only $182 in costs. The record does not disclose any explanation by the respondent why he remitted only $250 of the $500 to them, rather than $318.

The hearing committee found that his actions concerning the $500 "retainer" constituted a violation of S.J.C. Rule 3:07, Canon 9, DR 9-102 (B) (3), as appearing in 382 Mass. 795 (1981) (requiring recordkeeping and accounting to the client for all client funds).

warded, these files were found to contain the second PIP check, which the respondent had never cashed.[9]

3. *Due Process.* The respondent claims that the procedures by which suspension was imposed violated the principles of due process in several respects. In particular, he argues that he received insufficient notice of the nature of the proceeding and that the hearing committee was prejudiced against him by hearing all of the matters in the complaint seriatim without making its findings of fact on each count before hearing the next count.[10]

---

[9]The committee held that these actions constituted violations of S.J.C. Rule 3:07, Canon 2, DR 2-110 (B) (2) and (4) (requiring withdrawal if continued representation would result in violation of a Disciplinary Rule; requiring withdrawal if discharged by client); and S.J.C. Rule 3:07, Canon 9, DR 9-102 (B) (1) and (4) (requiring prompt notification to a client of receipt of client funds; requiring prompt payment to client of funds to which client is entitled).

We also believe, based on the facts found by the hearing committee, that the respondent's failure to disburse funds from the first PIP check and his failure even to credit the second check to his clients' account constituted a violation of S.J.C. Rule 3:07, Canon 6, DR 6-101 (A) (3) (neglect).

[10]In his brief, the respondent argues that seriatim hearings are inadequate and that each matter must be heard separately and by a different committee. This is inconsistent with his position before the hearing committee. "The theory of law on which by assent a case is tried cannot be disregarded when the case comes before an appellate court for review . . . ." *Santa Maria* v. *Trotto*, 297 Mass. 442, 447 (1937). See *Commonwealth* v. *Fernette*, 398 Mass. 658 (1986).

We note that other courts have held that severance of separate issues in bar discipline cases is inappropriate because it would defeat the very purpose of bar discipline. For example, in *In re Hines*, 482 A.2d 378, 383 (D.C. 1984), the court held that two unrelated disciplinary matters were properly heard together: "[a]n attorney's competence can be evaluated only by a disciplinary process that measures his or her behavior as a whole, not by separate inquiries into isolated instances of alleged misconduct." Accord *Office of Disciplinary Counsel* v. *Campbell*, 463 Pa. 472, 484 (1975), cert. denied, 424 U.S. 926 (1976) (determination of an attorney's fitness to practice law "can only be made by viewing the 'total picture' of his professional conduct"). Cf. *State* v. *Merski*, 121 N.H. 901 (1981), cert. denied, 455 U.S. 943 (1982).

a. *Notice.* The respondent argues, with respect to notice,[11] that he was not advised that the hearing committee would consider the cumulative effect of the current counts combined with his prior disciplinary cases.[12] Related to this contention is the respondent's demand for "ascertainable, written, and objective standards" for the disciplinary process, beyond our ethical rules and prior disciplinary cases.

The respondent's license to practice law is a property interest that cannot be suspended without due process of law. *Matter of Kenney*, 399 Mass. 431 (1987). It is undisputed that notice of charges or reasons for deprivation of a protected interest must be provided before that deprivation can be effected. *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950); *Goldberg* v. *Kelly*, 397 U.S. 254 (1970).

The notice provided to the respondent did not fall below the minimum required by due process. The five-count complaint considered by the hearing committee afforded the respondent ample notice that the cumulative effect of all five charges would be considered. The respondent asserts that *In re Ruffalo*, 390 U.S. 544 (1968), supports his conclusion that the notice afforded him was insufficient. We do not agree. In *Ruffalo*, an attorney had been disbarred on the basis of a charge that had been added to a multiple-count complaint *after* testimony had been heard on other charges. The Court held that the late addition of the charge on which the attorney was disbarred violated due process. The treatment of the

---

[11]The respondent and bar counsel have skirmished over whether the respondent waived his objection to the consolidated hearing in which all counts were considered together. The respondent claims that he could not have objected before the hearing, because he had no way of knowing until the end of the consolidated hearing that the hearing committee was considering all of the matters together. This is simply the notice question revisited. Accordingly, we dispose of the parties' procedural argument concerning waiver in disposing of the substantive issue of notice.

[12]The respondent received informal admonitions in June, 1984, April, 1982, and February, 1981. The respondent was publicly censured in August, 1983. See *Matter of Saab*, 3 Mass. Att'y Discipline Rep. 177 (1983).

respondent before us bears no relation to the complete lack of notice suffered by the attorney in *Ruffalo.*

The respondent complains, in essence, that he was not put on notice of the *theory* (cumulative effect) that bar counsel would employ. The United States Supreme Court has held, however, that a disciplinary authority may find an attorney's conduct deficient on an entirely different theory from the one argued by the investigative or prosecuting agency. *Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 654 (1985). Because a shift in theory does not violate due process, there certainly is no obligation to notify the respondent about the particular theory under which his case may be considered. Cf. *Langlitz v. Board of Registration of Chiropractors,* 396 Mass. 374, 377 (1985); *LaPointe v. License Bd. of Worcester,* 389 Mass. 454, 458 (1983).[13]

b. *Prejudice.* Assuming that this issue is properly before us, see note 10, first paragraph, *supra,* we reject the respondent's further contentions that it offends minimum standards of due process for a single hearing committee to hear all the matters in the complaint seriatim without making its findings in each count prior to hearing the next count, and that it was unfair for the hearing committee to accept aggravating evidence, for later consideration if needed, before determining his culpability. These claims amount to an assertion that the cumulative effect of all of the information caused such a risk of prejudice as to violate due process.

Similar contentions were raised in *Withrow v. Larkin,* 421 U.S. 35 (1975), a case in which the United States Supreme Court considered the propriety of a disciplinary sanction is-

---

[13]The respondent also contends that due process requires the promulgation of standards, beyond those contained in our rules, to govern attorney discipline proceedings. The respondent's contention that, in the absence of codified standards, discipline was "arbitrarily" imposed on him finds no support in the law of due process. The absence of certainty does not result in capriciousness. "The Due Process Clause simply does not mandate that all governmental decisionmaking comply with standards that assure perfect, error-free determinations." *Mackey v. Montrym,* 443 U.S. 1, 13 (1979). Ordinarily, an individual case is an inappropriate mechanism for promulgating rules.

sued against a physician by an agency that combined investigative and adjudicative functions. The combination of functions resulted in the adjudicators having access to all investigative materials, including those that might be irrelevant or prejudicial. The court held that there was not "such a risk of actual bias or prejudgment" that the procedures fell below the minimum. *Id.* at 47. Accord *Raymond* v. *Board of Registration in Medicine*, 387 Mass. 708 (1982). Moreover, there is a "presumption of honesty and integrity in those serving as adjudicators." *Withrow, supra* at 47. Accord *Raymond, supra* at 716.

4. *The appropriateness of the judgment of the single justice.* In reviewing the judgment of the single justice, we adhere to the standard announced in *Matter of Alter*, 389 Mass. 153, 156-158 (1983). Accordingly, we shall inquire "whether the order is markedly disparate" from the judgments of single justices in comparable cases. See, e.g., *Matter of Kerlinsky, ante* 67, 76 (1989); *Matter of Clooney*, 403 Mass. 654, 658 (1988).

The respondent contends that there was insufficient evidence in the record to conclude that his conduct constituted a "persistent and extended pattern of improper and unethical behavior" of the sort that would justify a suspension. See *Matter of McInerney*, 389 Mass. 528, 531 (1983).[14] We do not agree. There was ample evidence to find a pattern of unethical conduct. The actions that were the foundation for the current complaint encompassed violations of six Canons and involved, with respect to the Gilchrist matter, four separate instances of conduct involving fraud, deceit, or misrepresentation. There also were multiple violations of several other

---

[14]Although we do not necessarily agree with it, we assume for the sake of argument the correctness of the hearing committee's conclusion that "the individual violations . . . [were] no more serious than would require, at most, a public censure . . . ." Bar Counsel has argued with considerable persuasiveness that the respondent's conduct with respect to the Gilchrist matters would itself warrant a suspension. We need not reach this issue because the totality of the circumstances, as determined by the hearing committee, warrants suspension.

Disciplinary Rules. See notes 2, 4, 5, 7, 8, and 9, *supra*. Moreover, these violations occurred from 1978 to 1986, a period in which the respondent was the object of disciplinary measures by the board on four other separate matters.

The respondent's efforts to characterize his behavior as similar to the conduct censured in *Matter of Tully*, S.J.C. No. 84-12 BD (Mar. 25, 1986), are inapposite. There, the single justice considered only two instances of misconduct and noted that, during the brief span of time in which the violations occurred, Tully's close personal friend and legal associate had died. Thus, the single justice determined that the evidence did not "reveal a pattern of longstanding or continuous wrongful conduct." *Id.* (Slip op. at 7.) The unethical conduct now before us is indeed longstanding and continuous; thus, it falls within the ambit of our holding in *Matter of McInerney, supra*.

The respondent also argues that the imposition of a suspension on the basis of the cumulative effect of, as he has characterized them, "little tiny matters," is a "radical departure" from other disciplinary cases. The simultaneous consideration of separate violations, however, is an established part of the disciplinary system of this Commonwealth. For example, in *Matter of Sondej*, 2 Mass. Att'y Discipline Rep. 191 (1981), the single justice considered simultaneously two informations encompassing seven separate counts of misconduct. In arriving at an appropriate disciplinary sanction for the respondent in that case (a four-year suspension), the single justice considered the several violations together to arrive at his judgment. See *Matter of Herman*, S.J.C. No. 87-24 BD (Nov. 30, 1987) (public censure warranted by several unrelated violations of the Canons); *Matter of Gillis*, S.J.C. No. 86-39 BD (June 3, 1987) (six-month suspension imposed on the basis of five separate incidents considered cumulatively); *Matter of Collins*, 1 Mass. Att'y Discipline Rep. 63 (1979) (public censure imposed on the basis of three separate instances of minor misconduct); *Matter of Ravanis*, 1 Mass. Att'y Discipline Rep. 249 (1977) (two-year suspension imposed on the basis of three separate violations). We conclude

that consideration of the cumulative effect of several violations is proper.

The respondent also argues that the hearing committee, the board, and the single justice should have accorded greater weight to his proffer of evidence in mitigation, and he has objected as well to their consideration of his prior disciplinary record as evidence in aggravation. The respondent argues that this weighting of the evidence does not accord with what he characterizes as a "balancing test" traditionally adopted by the single justice and this court in which aggravating and mitigating evidence are offset. This is a misinterpretation.

While mitigating evidence has played an important role in some of our cases, "typical" mitigating evidence such as that offered by the respondent in this case has not been given substantial weight. *Alter, supra* at 157. The fact that the respondent appears to have an excellent reputation in his community and among certain judges and attorneys is not the sort of "special" mitigating factor to which we have accorded weight, nor is his claim that no harm resulted from his conduct. *Id.*

In contrast, evidence of past misconduct, particularly where that misconduct has been persistent, has been essential in determining the appropriate level of discipline to be imposed in any case. A sanction based on consideration of prior discipline is not, therefore, markedly disparate from the handling of other cases before the single justice. In *Matter of Oates*, S.J.C. No. 81-11 BD (Aug. 1, 1986) (slip op. at 1), for example, the single justice considered a respondent's three prior ethical delicts in determining that disbarment was the appropriate discipline: "Each successive transgression resulted in imposition of a sanction more onerous than that which he received for his prior misconduct. As a result, the respondent has now run the figurative gauntlet of sanctions short of disbarment . . . ." See *Matter of Provanzano*, S.J.C. No. 86-17 BD (Jan. 6, 1987) (slip op. at 8) (public censure imposed as a " 'next step' in escalating severity" of discipline). Cf. *Matter of Paris*, S.J.C. No. 79-29 BD (Jan. 5,

1987) (prior discipline considered as a matter of aggravation, although no escalation in discipline warranted).

All bar discipline proceedings take into account the "totality of the circumstances." *Matter of McInerney, supra* at 531. The respondent's prior disciplinary history suggests that sanctions less grave than suspension had no deterrent effect on his unethical behavior. Suspension is, thus, necessary to deter future misconduct and to preserve public confidence in the bar. *Matter of Clooney, supra* at 657-658. *Matter of Alter, supra.*

5. *Other issues.* The respondent claims that evidence to support the hearing committee's findings as adopted by the board was not substantial because, in several matters, the hearing committee accorded weight to the uncorroborated testimony of the complainants rather than accepting the respondent's explanations for what had occurred. Essentially, the respondent urges us to credit his testimony over the testimony of the complainants. Our rules concerning bar discipline, however, accord to the hearing committee the position of "the sole judge of the credibility of the testimony presented at the hearing." S.J.C. Rule 4:01, § 8 (3), as appearing in 381 Mass. 784 (1980). See *Salem* v. *Massachusetts Comm'n Against Discrimination*, 404 Mass. 170, 174 (1989) ("[a] mere reading of the transcript is not an adequate substitute for actually observing and hearing the witnesses in determining credibility"); *Dowd* v. *Director of the Div. of Employment Sec.*, 390 Mass. 767, 770 (1984) ("[t]he resolution of conflicts in testimony is one aspect of the fact-finding process in an administrative proceeding").

The respondent maintains that the hearing committee and the appeals panel of the board erred in refusing to make exculpatory findings based on uncontradicted evidence offered by him. The hearing committee was not obliged to credit the evidence or testimony offered by the respondent simply because it was uncontradicted. See *Piemonte* v. *New Boston Garden Corp.*, 377 Mass. 719, 733 (1979) (fact finder "was not obliged to accept [a party's] evidence at face value merely because no other evidence was offered"); *Northeast-*

*ern Malden Barrel Co.* v. *Binder*, 341 Mass. 710, 712 (1961) (fact finder did not have to accept as true uncontradicted testimony of a witness).

The respondent also contends that expert testimony was necessary to establish that he prepared inadequately and performed incompetently in the Borst matter. We disagree. "Expert testimony concerning the fact of an ethical violation is not appropriate . . . ." *Fishman* v. *Brooks*, 396 Mass. 643, 650 (1986). Moreover, the respondent's incompetence and lack of preparation are plain from the facts. His utter ignorance of appellate procedure "speaks for itself," making expert testimony wholly unnecessary. *Matter of Buckley*, 2 Mass. Att'y Discipline Rep. 24, 25 (1980).

In light of our conclusion that the hearing committee conducted the hearing properly and fairly, no "exceptional circumstances" exist that would support the respondent's request for a hearing de novo. *Matter of Kipp*, 383 Mass. 869, 870 (1981).

The judgment of the single justice ordering suspension for eighteen months is affirmed.[15]

*So ordered.*

---

[15]At oral argument, Bar Counsel asked that we reinstate the hearing committee's original disciplinary recommendation. Bar counsel did not take a cross appeal from the judgment of the single justice. "[F]ailure to take a cross appeal precludes a party from obtaining a judgment more favorable to it than the judgment entered below." *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 43 n.5 (1977), and cases cited.