## IN THE MATTER OF WAYNE H. EISENHAUER.

Suffolk. October 7, 1997. - January 14, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Attorney at Law,* Suspension, Disciplinary proceeding, Conflict of interest, Deceit, Fiduciary duty. *Due Process of Law,* Administrative hearing. *Administrative Law,* Proceedings before agency.

Sufficient evidence supported the findings of the Board of Bar Overseers that, in representing two estates and a trust, an attorney charged excessive fees, in violation of S.J.C. Rule 3:07, Canon 2, DR 2-106 (A); that the unusual language in the trust, drafted by the attorney, and his failure to make distributions to the beneficiaries of the trust and estates for four years while paying himself and family members, constituted a conflict of interest, in violation of Canon 5, DR 5-101 (A); that the attorney had neglected a legal matter, in violation of Canon 6, DR 6-101 (A) (3); that the attorney had failed to represent a client zealously, in violation of Canon 7, DR 7-101 (A) (1), (2) and (3); and that, by failing to terminate and distribute the assets in the trust, the attorney engaged in dishonesty, fraud, deceit, and misrepresentation, in violation of Canon 1, DR 1-102 (4), (5), and (6). [452-453]

In an attorney disciplinary matter, there was no evidence to support the claim of an attorney that bar counsel engaged in misconduct or was biased against him in violation of his due process rights. [453-454]

There was no merit to the claim of an attorney that criminal procedure, including a right to counsel, applied to bar discipline proceedings. [454-455]

In a disciplinary proceeding, the Board of Bar Overseers properly adopted the report of an appeal panel of a hearing committee, and properly considered an attorney's lack of credibility before the committee, his failure to show remorse, and his lack of awareness of wrongdoing, in formulating a recommendation for discipline. [455-456]

Where an attorney converted to his own use substantial assets in a trust and two estates, charged excessive fees, deceitfully attempted to conceal his actions, and failed to make any restitution, and where the cumulative nature of the misconduct and the attorney's lack of truthfulness and remorse in proceedings before the Board of Bar Overseers compounded his transgressions, the appropriate sanction was an indefinite suspension from the practice of law. [456-457]

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on January 24, 1996.

The case was heard by *Fried,* J.

*Earle C. Cooley* (*Christopher Cunio* with him) for the respondent.

*Terence McBride Troyer,* Assistant Bar Counsel.

ABRAMS, J. This is an appeal from an order of a single justice of this court suspending the respondent, Wayne H. Eisenhauer, from the practice of law for four years. The respondent claims error because (1) the evidence against him was insufficient; (2) bar counsel was biased; (3) criminal procedures were not followed; and (4) his suspension from the practice of law was disparate from sanctions imposed on other attorneys for similar conduct. For the reasons stated in this opinion, we conclude that the respondent should be indefinitely suspended from the practice of law.

We recite the findings of the hearing committee, which were adopted by the Board of Bar Overseers (board).[1] In 1985, the respondent drafted reciprocal wills for an elderly couple, Helen Brown Piggott and Clayton L. Piggott. When Helen Piggott died in May, 1989, Mr. Piggott engaged the respondent, at an hourly rate, to represent her estate. In July, 1989, Mr. Piggott became ill and executed a durable power of attorney in favor of the respondent, entrusting to him control of Mr. Piggott's property. Shortly thereafter, Mr. Piggott retained the respondent to draft a revocable trust called the Clayton L. Piggott Trust (trust). On the day that the trust was executed, Mr. Piggott assigned substantially all his property to it. The trust instrument named the respondent as trustee and contained a provision giving him veto power over the naming of any successor trustee. The trust instrument also required that, in order for Mr. Piggott to exercise his power of revocation, he had to revoke specifically the previously executed power of attorney.[2] After Mr. Piggott's death on September 14, 1989, the coexecutors of Mr. Piggott's estate retained the respondent as attorney for the estate.

Following the death of Mr. Piggott, the respondent served in three distinct roles: attorney for Mrs. Piggott's estate, attorney for Mr. Piggott's estate, and trustee to the trust. In total, he was entrusted with $579,350. At the time of the disciplinary hearing

[1]Thus, we treat the findings of fact by the hearing committee as those of the board.

[2]The board found that both these provisions were "highly unusual" and were included in the trust instrument "solely for the benefit of the respondent."

in the fall of 1993, the respondent had spent $457,378 of that total, including $219,985 he paid to himself for fees for services allegedly performed in all three roles.[3] In addition he had made no distribution to any of the beneficiaries,[4] had filed no account or inventory for either of the estates, and had prepared only one of the required annual accounts to the beneficiaries of the trust. In the one account he did prepare, he understated the fees that he had paid himself by a third (some $40,000).

The respondent commingled funds from Mrs. Piggott's estate with funds from the trust so that the funds were under his control as trustee instead of the control of the coexecutors of Mrs. Piggott's estate. Solely for his own benefit he vigorously resisted inquiries made by the trust beneficiaries and intentionally misled them about the status of trust assets and the terms of the trust. He unnecessarily delayed for almost one year in selling the Piggott home and other real estate, and he was not truthful in his explanations to the trust beneficiaries or to the hearing committee about the delay. He changed his billing records to increase the billing rate of his paralegal from $60 to $175. Using trust assets, the respondent hired his cousin as caretaker for the Piggott home, paying him $32,000 over the course of three

---

[3]The respondent paid himself $15,000 in attorney's fees for his work as the lawyer for Mr. Piggott's estate even though all of Mr. Piggott's assets had been transferred to the trust. The fee was comprised of $10,000 as a percentage fee and $5,000 for additional work described by the respondent as necessary. The board determined these to be "grossly excessive" and "exorbitant and wholly disproportionate to the services performed so as to shock the conscience." The only work performed was to prepare and file a petition for probate and to file an estate tax return.

The respondent also paid himself more than $25,000 to act as attorney for Mrs. Piggott's estate. This fee was comprised of $15,000 as a percentage fee and $10,000 for additional, allegedly necessary, work. The board determined the fee to be "clearly excessive" and "so exorbitant and wholly disproportionate to the services provided as to shock the conscience." Further, the board determined that the statement the respondent prepared in support of the fee misrepresented the value of the services provided. In addition, the board determined that the statement, prepared well after payment of the fees to the respondent and only after the demand of bar counsel, "grossly misrepresented" the additional work the respondent claimed to justify his fee. In fact, the board determined, such work was inherent in the minimum work necessary to probate the estate.

The respondent paid himself in excess of $170,000 for services provided to the trust. The board determined that these fees were "excessive" and "exorbitant and wholly disproportionate to the services performed."

[4]One beneficiary was loaned $20,000.

years. The respondent also used trust assets to pay $7,275 for real estate commissions and $11,495 for consulting services to a corporation wholly owned by the respondent and employing only the respondent's father. The board found that all payments to the corporation were tantamount to payments to the respondent, since under the terms of his rental agreement each dollar paid to the corporation reduced by an equal amount what the respondent had to pay for rent.

The hearing committee determined that the respondent had violated S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4), as appearing in 382 Mass. 769 (1981), by making deceitful representations to the beneficiaries of the trust for his own benefit and S.J.C. Rule 3:07, Canon 2, DR 2-106, as appearing in 382 Mass. 772 (1981), by charging excessive fees for his work on the two estates and the trust. The committee recommended that he be suspended from the practice of law for one year. The respondent filed an appeal challenging the committee's findings of fact, conclusions of law, and recommendation. Bar counsel also appealed, seeking respondent's indefinite suspension. An appeal panel reviewed the record de novo and heard oral argument. The appeal panel adopted the hearing committee's findings of fact and affirmed its conclusions of law. The appeal panel determined that the respondent had committed six additional violations of the disciplinary rules[5] and increased the recommended suspension to four years. The board adopted the appeal panel's report[6] and filed an information in the county court. After a hearing, the recommendation of the board was accepted by the single justice and the respondent was suspended from the practice of law for four years.

---

[5]The appeal panel determined that the respondent violated S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4), (5), and (6), as appearing in 382 Mass. 769 (1981), by altering billing records to bill paralegal time at lawyer's rates of $175 per hour; engaged in a conflict of interest in violation of S.J.C. Rule 3:07, Canon 5, DR 5-101 (A), as appearing in 382 Mass. 781 (1981), by including in the trust instrument provisions solely to benefit himself; and, in failing to terminate the trust or the estates and failing to make distributions to the beneficiaries for more than four years while paying himself and family members substantial fees, the respondent engaged in a conflict of interest in violation of DR 5-101 (A), neglected a legal matter in violation of S.J.C. Rule 3:07, Canon 6, DR 6-101 (A) (3), as appearing in 382 Mass. 783 (1981), and failed to represent a client zealously in violation of S.J.C. Rule 3:07, Canon 7, DR 7-101 (A) (1), (2), and (3), as appearing in 382 Mass. 784 (1981).

[6]The board deleted a footnote, not here relevant, from the appeal panel's report.

1. *Sufficiency of the evidence.* The respondent contends that the board's conclusion that he charged excessive fees in violation of DR 2-106 (A) was unsupported by subsidiary findings because the board failed to use the specific language of DR 2-106 (B). We reject the respondent's contention.

The board explicitly found that the fees charged were excessive. There is no requirement that the specific language of the rule be used. Nor, as the respondent contends, is expert testimony required to prove an ethical violation. *Matter of Saab*, 406 Mass. 315, 329 (1989).

The respondent also contends that there is insufficient factual support for the determination that the unusual provisions in the trust, see *ante* at 449 & n.2, constituted a conflict of interest in violation of S.J.C. Rule 3:07, Canon 5, DR 5-101 (A), as appearing in 382 Mass. 781 (1981), because the client could have consented to the conflict after full disclosure. This claim is also without merit. There is no indication in the record that the respondent disclosed the conflict to Mr. Piggott or that Mr. Piggott affirmatively consented to it. The respondent's argument that there was no finding that the provisions of the trust did not reflect Mr. Piggott's wishes is irrelevant. An attorney who faces a conflict has an affirmative duty to disclose it and obtain the client's consent. In a disciplinary hearing, the respondent must prove that the client's consent was obtained after full disclosure of the conflict.

The respondent further argues that because the trust's beneficiaries were not his clients, the board erred in concluding that by failing to terminate the trust or the estates and failing to make distributions to the beneficiaries for more than four years while paying himself and family members substantial fees, the respondent engaged in a conflict of interest (in violation of DR 5-101 [A]), neglected a legal matter (in violation of S.J.C. 3:07, Canon 6, DR 6-101 [A] [3], as appearing in 382 Mass. 783 [1981]), and failed to represent a client zealously (in violation of S.J.C. 3:07, Canon 7, DR 7-101 [A] [1], [2], [3], as appearing in 382 Mass. 784 [1981]). We do not agree. First, DR 6-101 (A) (3) makes no reference to "clients." Second, although the disciplinary rules do not define the word "client," in cases involving disciplinary rules in which the word "client" does appear, the single justices have not construed the word so narrowly as to exclude the circumstances here. See, e.g., *Matter of Silver*, 9 Mass. Att'y Discipline Rep. 295, 298 (1993) (trustee

violated S.J.C. Rule, Canon 5, DR 5-104 [A], as appearing in 382 Mass. 779 [1981]; DR 5-105, as amended, 397 Mass. 1216 [1986]; Canon 9, DR 9-102 [B] [3], as appearing 419 Mass. 1303 [1995]); *Matter of Mahoney*, 9 Mass. Att'y Discipline Rep. 209, 210-211 (1993) (trustee violated S.J.C. 3:07, Canon 9, DR 9-102 [A], as appearing in 419 Mass. 1303 [1995] and DR 7-101 [A]); *Private Reprimand No. 92-36*, 8 Mass. Att'y Discipline Rep. 332, 332-333 (1992) (trustee violated S.J.C. 3:07, Canon 6, DR 6-101 [A] [2] & [3], as appearing in 382 Mass. 783 [1981], and Canon 9, DR 9-102 [B] [3]). Third, the board's findings do not indicate that these violations were based on the respondent's relationship with the beneficiaries. The respondent's conduct more than supports a determination that the respondent violated his fiduciary duties to the trust and the estates.

The respondent also contends that, because of his broad discretionary powers as trustee, there is insufficient support for the board's conclusion that by failing to terminate and distribute the assets in the trust, the respondent engaged in dishonesty, fraud, deceit, and misrepresentation (in violation of S.J.C. 3:07, Canon 1, DR 1-102 [A] [4], [5], and [6], as appearing in 382 Mass. 769 [1981]). This claim is without merit. The board explicitly stated that the deceit arose "not in the [respondent's] failure to end the trust but in the affirmative misrepresentations made to the beneficiaries about his handling of the trust and its assets." The record amply supports the board.

2. *Bias claim.* The respondent argues that his due process rights were violated because he is being punished for interposing an aggressive defense based in part on allegations of misconduct and improper motives of bar counsel. He asserts that bar counsel pursued this complaint in retaliation for the respondent's refusal to acquiesce to bar counsel's alleged improper attempt to force him to exercise his discretion as trustee to terminate the trust and distribute its assets.

The respondent has a constitutionally protected interest in his license to practice law and he is entitled to due process in bar discipline proceedings. *In re Ruffalo*, 390 U.S. 544, 551 (1968). *Matter of Kenney*, 399 Mass. 431, 435 (1987). On the record before us, the respondent has failed to demonstrate how these rights have been violated. There is no evidence in the record that bar counsel was biased or engaged in misconduct. Nor is there any evidence that either the appeal panel, the board, or the

single justice was biased. The respondent was afforded notice and the opportunity to be heard, to present evidence, and to challenge evidence against him. He has had the opportunity to appeal to a panel of the board, the board, a single justice, and the full court. See *Matter of Kenney, supra* at 436 (respondent in bar discipline proceeding entitled to fair notice and an opportunity for explanation and defense).

3. *Claims based in criminal procedure.* The respondent claims several errors premised on the theory that criminal procedure applies to bar discipline proceedings. We reject these claims because bar discipline cases are not criminal. See *Matter of Jones*, 425 Mass. 1005, 1007 (1997). Bar discipline is an "administrative process under the authority of the justices of the Supreme Judicial Court." *Matter of Pressman*, 421 Mass. 514, 517 (1995). The primary purpose of a disciplinary proceeding is to protect the public and ensure the public's confidence in the integrity of the bar. *Matter of Gordon*, 385 Mass. 48, 55 (1982). *Matter of Keenan*, 314 Mass. 544, 547 (1943). Therefore, the special protections afforded a criminal defendant whose liberty is at stake are not applicable. See *Walker* v. *State Bar*, 49 Cal. 3d 1107, 1116 (1989); *Matter of Peters*, 332 N.W.2d 10, 17 (Minn. 1983). The respondent is not entitled to the full panoply of rights afforded to a criminal defendant. *Ainsworth* v. *State Bar*, 46 Cal. 3d 1218, 1230 (1988), cert. denied, 489 U.S. 1081 (1989); *State* v. *Harfmann*, 638 P.2d 745, 747 (Colo. 1981).

The respondent first claims, as he did below, that he was denied his right to effective assistance of counsel because of alleged actual or potential conflicts of interest faced by the lawyers who represented him before the hearing committee.[7] The respondent asserts that his lawyers may have compromised his defense in order to curry favor with bar counsel.

The respondent's claim fails because there is no right to counsel in bar discipline proceedings and "the constitutional right to counsel has not been applied to bar disciplinary matters as a matter of due process." *Matter of Jones, supra* at 1007. Further, contrary to the respondent's assertion, § 3.4(b) of the Rules of the Board of Bar Overseers (1997) does not create the

---

[7]The respondent was represented by new counsel before the appeal panel, and yet other counsel before the single justice and the full court.

right to counsel.[8] It merely sets forth the rules of service in the event a respondent is represented by counsel in a formal proceeding before the board. Nor does any other board rule, or rule of the court create such a right. Moreover, the fact that the board assists an indigent attorney in obtaining pro bono counsel does not establish a right to representation in a bar discipline proceeding.

The respondent next claims that his questioning of bar counsel's motives and actions was used against him by the board when it adopted the appeal panel report that added six disciplinary violations and increased the recommended suspension by three years. The respondent asserts that this increase was presumptively vindictive. See *North Carolina* v. *Pearce*, 395 U.S. 711 (1969); *Commonwealth* v. *Hyatt*, 419 Mass. 815 (1995). We do not agree.

It is the board, not the hearing committee or the appeal panel, that is responsible for making a recommendation to the court. S.J.C. Rule 4:01, § 8 (4), as amended, 394 Mass. 1109 (1985). We look to the board's recommendation, its experience, and its expertise to try and dispose of disciplinary matters uniformly. We have accepted the board's recommendation of a sanction more severe than that recommended by the hearing committee and appeal panel. See, e.g., *Matter of Palmer*, 423 Mass. 647, 649 (1996) (four-year suspension raised to disbarment); *Matter of Kondel*, 11 Mass. Att'y Discipline Rep. 148, 152 (1995) (indefinite suspension raised to disbarment).

The primary purpose of a disciplinary proceeding is to protect the public and ensure the public's confidence in the integrity of the bar. See *ante* at 454. Therefore, the board must consider a respondent's lack of candor, lack of remorse, and lack of awareness of wrongdoing in formulating a recommendation for discipline. See, e.g., *Private Reprimand No. PR-93-21*, 9 Mass. Att'y Discipline Rep. 391, 392 (1993); *Matter of Friedman*, 7 Mass. Att'y Discipline Rep. 100, 103 (1991).

The respondent contends that the board's recommended

---

[8]Section 3.4 of the Rules of the Board of Bar Overseers was amended in September, 1997. Because this case came before the board prior to the amendment, the amendment does not govern this case. We note that § 3.4(d) as amended now provides: "If a respondent in a formal proceeding desires counsel and cannot afford to retain counsel, then, upon application, the Board will seek to assist the respondent to obtain counsel either at a reduced or no cost. Nothing in this subsection (d) accords any substantive right to the respondent with respect to the appointment or payment of counsel."

suspension is, in part, punishment for presenting a vigorous defense, and cannot stand because it would chill the right to a defense. See *Commonwealth* v. *Coleman*, 390 Mass. 797, 808 (1984) (stating that it would impermissibly burden defendant's right to plead not guilty and testify for sentencing judge to take into account the judge's belief that defendant perjured himself). We do not agree.

The respondent was not disciplined for defending himself. The board adopted findings that the respondent was not credible in his testimony before the hearing committee. See *Matter of Tobin*, 417 Mass. 81, 85 (1994), citing S.J.C. Rule 4:01, § 8 (3), as appearing in 381 Mass. 784 (1980) (hearing committee sole judge of credibility). The respondent's candor and trustworthiness both directly affect his capacity to practice law. See *Matter of Efron*, 7 Mass. Att'y Discipline Rep. 89, 90 (1991) ("respondent's lack of forthrightness and truthfulness before the committee does not bode well for the respondent's ability to perform legal work in a professional manner"). His failure to show remorse and his lack of awareness of wrongdoing were proper for the board to consider in formulating a recommendation for discipline. See *Matter of Clooney*, 403 Mass. 654, 657-658 (1988) ("[R]espondent's persistent assertions that he did nothing wrong . . . demonstrated that he 'continues to be unmindful of certain basic ethical precepts of the legal profession' . . . . In cases such as this, disciplinary measures are necessary to deter future misconduct on the part of all members of the bar and to preserve public confidence in the bar").

4. *Appropriateness of the term of suspension.* The respondent's final claim is that the four-year suspension he received is markedly disparate from sanctions imposed in similar cases. See *Matter of Alter*, 389 Mass. 153, 156 (1983). He argues that, at most, a one-year suspension would be appropriate.

In *Matter of Schoepfer*, *ante* 183, 188 (1997), we said that "[t]he uneven disposition of past disciplinary cases concerning the misuse of clients' funds requires us not to try to decide whether the sanction we impose is reasonably consistent with sanctions heretofore imposed in similar cases." We also stated that where "an attorney intended to deprive the client of funds, permanently or temporarily, or if the client was deprived of funds (no matter what the attorney intended), the standard discipline is disbarment or indefinite suspension." *Id.* at 187. In addition, where there are "aggravating circumstances, such as

other violations of disciplinary rules established in the same proceeding or earlier," a greater sanction than otherwise appropriate might be warranted. *Id.* at 188.

In this case the board determined that the respondent "plucked" the trust and estates, consumed nearly 80% of their value, and spent much of it for his and his family's benefit. It determined that his churning was exacerbated by his deceit and misrepresentations in attempting to conceal his inappropriate actions, by the value of the assets consumed and the size of the fees taken, and by his failure to make any restitution. The board found that the cumulative nature of the respondent's misconduct and his lack of candor before the hearing committee further compounded his transgressions.

Neither bar counsel nor the board has appealed. However, in view of the board's findings and consistent with *Matter of Schoepfer, supra,* we conclude that the respondent should be indefinitely suspended from the practice of law.

The case is remanded to the single justice for an order indefinitely suspending the respondent from the practice of law.

*So ordered.*