## IN THE MATTER OF PAUL WAITZ.

September 14, 1993. - October 18, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Attorney at Law*, Disciplinary proceeding, Suspension. *Supreme Judicial Court*, Membership in the bar.

Statement of the applicable standard for evaluating an attorney's petition for reinstatement to the practice of law, Supreme Judicial Court Rule 4:01, § 18, as amended, 394 Mass. 1106 (1985). [303-304]

In the circumstances of an attorney's fifth petition for reinstatement to the practice of law from an indefinite suspension, the conclusions of the Board of Bar Overseers that the attorney failed to sustain his burden of proving he had the moral character [304-306] or the competency and learning in law [306] required for admission to practice law were supported by the evidence.

The record of hearings on an attorney's petition for reinstatement to the practice of law from an indefinite suspension established that the attorney had acted inappropriately and in a manner inconsistent with the integrity required of attorneys during his suspension, and the Board of Bar Overseers correctly concluded that the attorney's reinstatement would be detrimental to the integrity and standing of the bar, to the administration of justice, and to the public interest. [306-307]

In circumstances in which an attorney petitioned and received a hearing five times within approximately a four-year period for reinstatement to the practice of law, this court, in response to a recommendation of bar counsel, prohibited the attorney from filing another petition for reinstatement for a three-year period. [307]

PETITION filed in the Supreme Judicial Court for the county of Suffolk on September 4, 1991.

The case was heard by *Nolan*, J.

*Terence M. Troyer*, Assistant Bar Counsel.

*Richard J. Vita* for the petitioner.

ABRAMS, J. Bar counsel appeals from the judgment of the single justice allowing Paul Waitz's fifth petition for rein-

statement to the practice of law from an indefinite suspension entered on October 2, 1987, retroactive to September 8, 1983. The Board of Bar Overseers (board) recommended that the fifth petition for reinstatement be denied. The single justice allowed the petition and denied bar counsel's motion for a stay of execution.[1] We reverse and order the reinstatement of Waitz's indefinite suspension from the office of attorney at law.[2]

1. *The facts.* The facts are as follows. Paul Waitz was admitted to the practice of law in 1959. In 1983, he was convicted of usury. See G. L. c. 271, § 49 (1992 ed.). Based on the conviction and the underlying facts, bar counsel filed a petition for discipline. The board referred the matter to a hearing panel.

The panel determined that Waitz made a usurious loan for $36,000 to Paul and Leonide Lacet, who had been his clients for several years. The Lacets' native language was not English. On behalf of Paul Lacet, Waitz negotiated the purchase of the gasoline station which Lacet operated under lease from Amoco. Lacet then asked Waitz to help him obtain the necessary funding for the purchase. Waitz told Lacet that he could arrange a loan "through a [Diane] Gewirtz of New

---

[1]Bar counsel did not appeal from the denial of the stay.

[2]On September 15, 1993, we issued the following order: "The judgment of the single justice is vacated. The case is remanded to the Supreme Judicial Court for Suffolk County for entry of an order reinstating Paul Waitz's indefinite suspension from the office of attorney at law and for the entry of a judgment ordering that Paul Waitz comply with the provisions of Supreme Judicial Court Rule 4:01, § 17, by filing his affidavit of compliance with the Court and the Board of Bar Overseers within fourteen (14) days of the day of this order; that Paul Waitz forthwith withdraw his appearance as counsel for all clients in matters now pending in any court, board, commission, tribunal, or agency of the Commonwealth or its subdivisions, and supply a copy of each withdrawal to the Court and to Bar Counsel; and that Paul Waitz forthwith resign all his appointments as guardian, conservator, executor, administrator, trustee, attorney-in-fact or other fiduciary, and supply a copy of each resignation to the Court and to Bar Counsel."

York." Waitz drafted a note and mortgages to Gewirtz which the Lacets signed.[3]

Diane Gewirtz was Waitz's wife. Waitz did not disclose this fact to the Lacets. Except for this loan, Gewirtz had used the name Waitz since 1956, when she married Waitz. Waitz used funds which he jointly owned with Gewirtz to make the loan. The panel concluded that Waitz's conduct, independent of his conviction of a felony, constituted a conflict of interest in violation of Supreme Judicial Court Rule 3:07, Canon 5, DR 5-101 and DR 5-104, as appearing in 382 Mass. 779 & 781 (1981). The panel recommended that he be suspended from practice for a period of one year. The board adopted the report of the hearing panel but modified the recommendation for discipline, recommending a suspension for a period of two and one-half years. On November 21, 1984, the single justice imposed a suspension of eighteen months.

On May 9, 1985, Waitz filed his first petition for reinstatement. The board referred this petition to a panel for hearing and recommendation. The board recommended that Waitz's petition for reinstatement be denied based on the panel's finding that Waitz had "in the period since his suspension, signed another person's name without authorization in order to obtain credit cards issued in another's name, run up bills in the name of that person and not held her harmless,[4] made numerous false statements on several occasions in order to obtain credit,[5] attempted to deceive,[6] given a

---

[3] The panel determined that the rate of interest charged the Lacets "greatly exceeded twenty-five percent."

[4] The panel determined that, in 1984, Waitz obtained a Visa card and an Amoco credit card in the name of Mollie Keizer by signing her name to an application without her authorization. Waitz accumulated almost $2,000 in bills on the Visa card and at least $1,500 in bills on the Amoco card without Keizer's permission.

[5] The panel determined that, in 1985, Waitz filled out an application for a Visa card in his own name that falsely stated his address, his number of years at that address, and his previous address. In addition, the application stated a monthly income far in excess of his actual income and listed a debt balance of zero even though his debts exceeded $62,000.

check which was not backed by sufficient funds in order to obtain money from another,[7] and held himself out to the public as practicing law."[8] The single justice denied Waitz's first petition for reinstatement on July 30, 1986.

Less than six months later, Waitz filed a second petition for reinstatement. Bar counsel then filed a new petition for discipline based on the evidence and facts adduced at the hearing on Waitz's first petition for reinstatement. The board adopted the facts established during the hearing on Waitz's first petition for reinstatement and determined that Waitz was guilty of violations of the disciplinary rules in addition to those which had led to his first suspension. The board concluded that Waitz's conduct constituted dishonesty, fraud, deceit, and misrepresentation in violation of S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4), as appearing in 382 Mass. 769-770 (1981), and that it adversely reflected on his fitness to practice law in violation of S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (6). Considering his history of prior discipline, which included two instances of private discipline

---

[6]In late 1983, Waitz made false statements on an application for bankruptcy.

[7]In 1985, Waitz fraudulently obtained money from a Mr. Jedeon, who was Lebanese and who spoke English with difficulty, by taking $1,000 in cash from Mr. Jedeon in return for a check in the amount of $10,500. The bank returned the check for insufficient funds.

[8]In 1984 and 1985, following his suspension, Waitz continued to operate out of the office from which he had practiced law and which continued to bear a prominent sign, "Law Offices," on the front of the building and "Paul Waitz – Attorney at Law" on the side of the building. Waitz admitted that these signs remained on the building for at least one and one-half years after his suspension. In late 1984 or early 1985, Waitz gave Jedeon a business card of Attorney George McDermott which had "George McDermott" crossed out and "Paul Waitz" written in so that the card read "Paul Waitz" "Attorney at Law." In addition, on July 23, 1984, Waitz appeared at the Hingham planning board and said that he was counsel for Peter and Ellen Bruzzese. Finally, in 1985, Waitz stated on the application which he filled out for a Visa card in his own name that he was an attorney.

in addition to the suspension imposed in 1984,[9] the board recommended that Waitz be indefinitely suspended. On October 2, 1987, the single justice accepted the board's recommendation that Waitz's petition for reinstatement be denied, and ordered that an indefinite suspension be imposed on Waitz retroactive to September 8, 1983, the date of Waitz's initial temporary suspension.

Waitz filed his third petition for reinstatement eight months later on July 6, 1988. At the ensuing hearing, the panel determined that: Waitz had failed to obtain significant gainful employment;[10] he failed to make any payment on a $2,000 malpractice claim; he failed to make $200 per month payments on his Chapter 13 wage earner's plan; he failed to pay $2,600 owed to Keizer and City Bank as a result of his use of credit cards issued in Keizer's name; and he owed the Internal Revenue Service $20,000. The panel also noted that two stolen automobile engines were found at the house in Sharon where Waitz had lived for many years, one of them in an automobile which he formerly owned. The panel did not believe Waitz's explanation that he gave the house to his son as trustee based on Waitz's testimony that he was responsible for the mortgage payments, the utilities, and other household expenses. The panel's factual determinations were adopted by the full board. The board recommended that the petition be denied. The single justice denied the petition for reinstatement.

In 1990, Waitz filed his fourth petition for reinstatement. For a fourth time, the panel found that Waitz was not qualified for reinstatement. The panel mentioned three bases for its dissatisfaction with Waitz's demonstration of his moral character: (1) he was "something less than candid" with the panel;[11] (2) he similarly was lacking in candor with the

---

[9]Prior to his 1984 eighteen-month suspension, Waitz had received two private reprimands for neglect of clients' business. In one of these prior matters, Waitz deceived his clients.

[10]Waitz reported only $3,000 in income in two years.

[11]In the course of his fourth reinstatement petition, Waitz failed to list his employment with the Bevilacqua Family Trust on his reinstatement

Bankruptcy Court;[12] and (3) he was unconcerned about his obligation to pay Federal taxes.[13] These facts, combined with the panel's conclusion that Waitz had not "prepared himself to be now able to exercise that minimum degree of lawyering skills that is required of all lawyers," resulted in a recommendation to the board to deny the petition for reinstatement. The full board adopted the panel's factual findings and recommended that reinstatement be denied. The single justice denied reinstatement on July 2, 1991.

Waitz filed his fifth petition for reinstatement on September 4, 1991, only two months after his fourth petition had been denied. As with his four previous petitions for reinstatement, Waitz's fifth petition was referred to a panel for hearing and recommendation. And, like the four prior panels, the fifth panel unanimously recommended denial of the petition. The full board adopted the panel's report and recommended that the petition for reinstatement be denied. On December 16, 1992, after hearing, the single justice allowed Waitz's petition for reinstatement.

2. *The applicable standard for evaluating petitions for reinstatement.* Supreme Judicial Court Rule 4:01, § 18, as amended, 394 Mass. 1106 (1985), governs reinstatement.

---

questionnaire and also denied its existence in testimony before the panel. On cross-examination, Waitz continued to deny the employment until shown a debtor statement he signed under oath in connection with a bankruptcy petition he and his wife filed in 1989 which listed this employment and the income derived therefrom. The panel disbelieved Waitz's claim that he forgot this employment and concluded that the omission was intentional.

[12]Waitz failed to report assets on the debtor statement which he filed with the Bankruptcy Court in 1989.

[13]When asked about the $200,000 in Federal taxes which he owed, Waitz testified that he did not know whether this debt had been discharged in bankruptcy. The panel concluded that the amount of unpaid taxes and Waitz's lack of knowledge concerning whether the taxes were still owed indicated a continuing cavalier attitude on Waitz's part toward his duties to the bar and to the public. At the third reinstatement petition hearing, the tax debt was $20,000. At the fourth reinstatement petition, the tax debt was $200,000. There is no explanation for this difference in the record.

Section 18 (5) provides that, on a petition for reinstatement, "the respondent-attorney . . . shall have the burden of demonstrating that he has the moral qualifications, competency and learning in law required for admission to practice law in this Commonwealth, and that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar, the administration of justice, or to the public interest." To sustain his or her burden of proof under this rule, an attorney seeking reinstatement after suspension or disbarment must affirmatively demonstrate that (1) he or she has the moral character required for admission to practice law in this Commonwealth; (2) he or she has the competency and learning in the law required for admission; and (3) his or her resumption of the practice of law will not be detrimental to the integrity and standing of the bar, the administration of justice, or to the public interest.

A. *Moral qualifications.* A disciplined attorney who seeks reinstatement is asking to be " 'held out by the Commonwealth,' acting by its judicial department 'as one worthy of trust and confidence in matters pertaining to the law.' " *Matter of Keenan,* 313 Mass. 186, 217 (1943), quoting *Bergeron, petitioner,* 220 Mass. 472, 476 (1915). Disbarment "is conclusive evidence of his lack of moral character at the time of his removal from office. And it continues to be evidence against him with respect to lack of moral character at later times." *Matter of Pool,* 401 Mass. 460, 464 (1988), quoting *Matter of Keenan, supra* at 219. The attorney, therefore, has the burden "to establish affirmatively that since his disbarment he has become 'a person proper to be held out by the court to the public as trustworthy.' " *Matter of Pool, supra* at 464, quoting *Matter of Keenan, supra* at 219, and *Boston Bar Ass'n* v. *Greenhood,* 168 Mass. 169, 183 (1897). At Waitz's fifth reinstatement hearing, for the first time there was no evidence of new misconduct by Waitz. However, the facts established in the prior proceedings showed that, throughout the first eight years of his suspension, Waitz continued to engage in conduct which did not display moral character.

Moreover, the panel which considered Waitz's fifth petition for reinstatement determined that Waitz was less than candid with the panel with respect to Waitz's status as a tax delinquent. The panel concluded, based on Waitz's testimony, that Waitz had not paid his tax debt. Papers submitted by Waitz's counsel after the conclusion of the fifth hearing indicated that the Internal Revenue Service no longer considered Waitz to be a tax delinquent. The panel acknowledged this fact but stated that "[i]t is clear from Mr. Waitz's testimony that he has not paid the $200,000 in overdue taxes and the reason why the Internal Revenue Service no longer carries Mr. Waitz as delinquent is frankly left to speculation by the [p]anel. Mr. Waitz testified at the hearing that he believed that his bankruptcy petition affected his tax status, but has not presented any evidence to support that proposition. Mr. Waitz's tax status is thus surrounded by a mist and fog which it was Mr. Waitz's obligation, as the petitioner, to confront." The panel observed that "the fact that [Waitz] would come before us without having determined one way or the other whether or not the taxes are owed again demonstrates a lack of understanding of his burden on a Petition for Reinstatement." The panel concluded that "Waitz's failure to promptly and forthrightly address the issue of the taxes raises serious questions about his integrity and moral character."

Reform is "a state of mind" that must be manifested by some external evidence. See *Matter of Allen*, 400 Mass. 417, 423-425 (1987) (years of counseling and teaching inmates and assistance to the Indian immigrant community); *Matter of Hiss*, 368 Mass. 447, 462-466 (1975) (twenty-three years of exemplary behavior). At Waitz's fifth reinstatement hearing, the sole evidence of his civic, charitable, and social activities consisted of his repetition of evidence already heard at prior hearings, particularly the third petition for reinstatement. The panel observed that Waitz's failure to convince four previous hearing panels that he was a proper candidate for reinstatement "require[d] that Mr. Waitz demonstrate that there has been a substantial change in the facts that

would justify reinstatement." "[P]assage of time alone is insufficient to warrant reinstatement." *Matter of Hiss, supra* at 460 n.19. The board's conclusion that Waitz failed to sustain his burden of proving that he has the moral character required for admission to practice law was supported by the evidence.

B. *Competency and learning in law.* Rule 4:01, § 18 (5), requires an attorney seeking reinstatement to demonstrate that he or she has the "competency and learning in the law . . . required for admission to practice law in this Commonwealth." With respect to Waitz's fifth petition for reinstatement, the board determined that Waitz's efforts to stay abreast have been "scant and unconvincing."[14] He attended a Massachusetts Continuing Legal Education practical skills course in January, 1989, and he attended three additional courses at a later time. In addition, he spent "two to three hours" per week "studying the law or reading publications" in the office of a lawyer friend. See *Matter of Masuck*, 3 Mass. Att'y Discipline Rep. 135 (1982) (attorney who had been under suspension for six years, three months, required to pass bar examination before reinstatement); *Matter of Hetnick*, S.J.C. No. 76-11BD (June 9, 1992) (essay portion of bar examination required of attorney under suspension for sixteen years). The board's conclusion that Waitz failed to sustain his burden of proving that he has the competency and learning in law required for admission to practice law in this Commonwealth was supported by the evidence.

C. *Detriment to the integrity and standing of the bar, the administration of justice, or to the public interest.* Rule 4:01, § 18 (5), requires an attorney seeking reinstatement to demonstrate that "his [or her] resumption of the practice of law will not be detrimental to the integrity and standing of the bar, the administration of justice, or to the public interest." In evaluating petitions for reinstatement, "the true test must always be the public welfare." *Matter of*

---

[14]The single justice required that Waitz pass the multistate professional responsibility examination as a condition to reinstatement.

*Keenan*, 314 Mass. 544, 547 (1943), quoted with approval in *Matter of Allen*, *supra* at 421, and *Matter of Gordon*, 385 Mass. 48, 54 (1982). The impact of a reinstatement on public confidence in the bar and in the administration of justice is a substantial concern.

With respect to Waitz's fifth petition for reinstatement, the board concluded, based on the facts established at the reinstatement hearings, that reinstatement of Waitz "would be detrimental to the integrity and standing of the bar, the administration of justice, [and] to the public interest." We agree. The established facts show that, during his suspension, Waitz acted inappropriately and in a manner inconsistent with the integrity required of attorneys.

The panel which considered Waitz's fifth petition for reinstatement recommended that we prohibit Waitz from filing a petition for reinstatement for two years. In his oral argument, bar counsel requested that we follow that recommendation. We conclude that Waitz should not be allowed to file a petition for reinstatement prior to three years from the date of this opinion. The case is remanded to the Supreme Judicial Court for Suffolk County where a judgment shall be entered in accordance with the order of September 15, 1993, and by adding that Waitz may not file a petition for reinstatement for three years from the date of this opinion.

*So ordered.*