In the Matter of Reuben S. Dawkins. July 17, 2000. *Attorney at Law,* Disciplinary proceeding, Reinstatement.

Reuben S. Dawkins appeals from orders of a single justice of this court (1) denying his second petition for reinstatement to the bar and (2) prohibiting him from reapplying for reinstatement for an additional ten years. We affirm.

*Procedural background.* Dawkins was suspended from the practice of law for six months, effective April 2, 1992, because of his intentional misuse of

---

client funds. *Matter of Dawkins*, 412 Mass. 90 (1992).[1] He petitioned for reinstatement in October, 1992. Bar counsel opposed reinstatement and filed a new petition for discipline that charged Dawkins with numerous additional ethical violations, including the further misuse of client funds and serious neglect of client matters. A hearing panel of the Board of Bar Overseers (board), after hearing the consolidated matters, recommended that Dawkins's request for reinstatement be denied and that he be disbarred. The board adopted that recommendation. However, a single justice of this court imposed an indefinite suspension, retroactive to April 2, 1992, the date of the earlier six-month suspension.

In September, 1996, bar counsel filed a petition for contempt against Dawkins, claiming that Dawkins had continued to practice law during his suspension and continued to hold himself out as an attorney. The single justice declined to hold Dawkins in contempt at that time, because it was not clear that he had deliberately disobeyed the order of suspension.

In May, 1997, Dawkins filed his second petition for reinstatement. A hearing panel recommended denial of that petition and, in light of evidence that surfaced at the hearing suggesting that Dawkins continued to hold himself out as an attorney, the panel members also stated that they believed that bar counsel would be justified in initiating a second contempt proceeding. The board agreed with the panel's recommendation that reinstatement be denied.[2] When the case proceeded once again to the county court, bar counsel filed a petition for contempt which was consolidated with the petition for reinstatement. The single justice, after a hearing, denied the reinstatement petition. He also ordered that Dawkins not be allowed to reapply for reinstatement for an additional ten years from the date of the decision.

*Order denying reinstatement.* It was Dawkins's burden, as a petitioner for reinstatement, to prove that he satisfied the requirements for reinstatement set forth in S.J.C. Rule 4:01, § 18 (5), as amended, 394 Mass. 1106 (1985).[3] He was thus required to prove that he possessed "the moral qualifications, competency and learning in law required for admission to practice law in this Commonwealth, and that his resumption of the practice of law [would] not be detrimental to the integrity and standing of the bar, the administration of justice, or to the public interest." *Id.* See *Matter of Pool*, 401 Mass. 460, 463 (1988). The hearing panel concluded that Dawkins met none of these requirements. We agree.

a. *Moral qualifications.* Dawkins's indefinite suspension in 1994 was conclusive evidence that he was, at the time, morally unfit to practice law, and it continued to be evidence of his lack of moral character in 1997, when he petitioned for reinstatement. *Matter of Waitz*, 416 Mass. 298, 304 (1993). *Matter of Pool, supra* at 464. *Matter of Keenan*, 313 Mass. 186, 219 (1943). It

---

[1]We have since suggested that an indefinite suspension would have been a more appropriate sanction for Dawkins's misconduct. See *Matter of Schoepfer*, 426 Mass. 183, 187 (1997).

[2]Twelve members of the board were present when the matter was considered. Four recused themselves. The remaining eight voted unanimously to adopt the panel's report and recommendation.

[3]We apply the version that was in effect when Dawkins filed his second petition for reinstatement. The rule has since been amended, although the relevant language has not changed. S.J.C. Rule 4:01, § 18, as appearing in 425 Mass. 1325 (1997).

was incumbent on Dawkins, therefore, to establish affirmatively that, during his suspension period, he had redeemed himself and become "a person proper to be held out by the court to the public as trustworthy." *Id.*, quoting *Boston Bar Ass'n* v. *Greenhood*, 168 Mass. 169, 183 (1897).

We need not recite the evidence in detail. Suffice it to say this was not a close case. The hearing panel found, among other things, that Dawkins was not forthcoming on his reinstatement questionnaire; that he had no real understanding of the misconduct that led to his indefinite suspension, and no real awareness of the harm he had caused his clients[4]; that he failed to reimburse the clients' security board for what it had paid to a former client; that he failed to resolve outstanding Federal and State tax liabilities; and that he engaged in conduct during his suspension period that constituted the practice of law or, at least, gave the appearance of practicing law. Far from affirmatively establishing Dawkins's rehabilitation, the evidence affirmatively established an absence of rehabilitation.[5]

b. *Competency and learning in law.* To demonstrate that he possessed the requisite "competency and learning in law" and that he had stayed abreast of developments in the law while suspended, Dawkins testified at the reinstatement hearing that he read Massachusetts Lawyers Weekly when he was able to borrow a copy of it, that he read the "advance sheets" (although his subscription expired about a year before the hearing), and that he had been reading an unspecified book on legal ethics that he borrowed from a friend. These efforts were less than those deemed insufficient in *Matter of Waitz*, *supra* at 306.

c. *Effect of resumption of practice.* "The act of reinstating a disbarred [or indefinitely suspended] attorney involves what amounts to a certification to the public that the person is a person worthy of trust." *Matter of Gordon*, 385 Mass. 48, 54 (1982). The public interest is paramount in reinstatement cases. *Id.* at 55.

Dawkins's failure to prove the moral qualifications, competency, and learning in law necessary for reinstatement leads us to the inescapable conclusion that he also has failed to prove that the standing and integrity of the bar, the administration of justice, and the public interest would not be compromised if he were to be readmitted.

---

[4]We do not read anything in the hearing panel's report to suggest that Dawkins was being required to admit his wrongdoing, or to indicate that his refusal to admit wrongdoing was the sole reason for the panel's recommendation that reinstatement be denied. Contrast *Matter of Hiss*, 368 Mass. 447, 455-459 (1975) (holding that board erred in requiring admission of guilt and repentance as part of the proof of present good character and rehabilitation). Dawkins has at all times denied wrongdoing.

[5]The hearing panel was warranted in discounting several letters it had received from various individuals in support of Dawkins's reinstatement. While letters and affidavits of recommendation (and live testimony from character witnesses) can sometimes provide valuable evidence of a reinstatement petitioner's good character and suitability for reinstatement, the letters in this case focused mainly on the good that Dawkins had done as an attorney before his suspension and shed little or no light on the question of moral rehabilitation and present moral qualifications. It was also apparent, indeed some of the writers had admitted, that they knew little or nothing about the reasons for either of his suspensions or of the fact that he had been suspended twice. See *Matter of Hiss*, *supra* at 464-467 (discussing use of letters, affidavits, and testimony to establish present good character).

d. *Summary and conclusion.* The hearing panel, board, and single justice were amply warranted in determining that Dawkins had not met his heavy burden of proving his fitness for reinstatement.

Dawkins was not young or inexperienced when he committed the acts and omissions that led to his two suspensions. His misconduct was not isolated or minor. He has had no gainful employment during his suspension, nor has he been involved in any civic, social, or charitable activities that might be indicative of rehabilitation. To the contrary, while suspended he has engaged in conduct that constituted the practice of law or gave the appearance of practicing law, and, in the words of the single justice, he thus demonstrated "a cavalier attitude toward compliance with this court's orders."[6] He has not shown present competence in legal skills.[7] Although he has now been suspended for eight years, the "passage of time alone is insufficient to warrant reinstatement." *Matter of Hiss*, 368 Mass. 447, 460 n.19 (1975).

*Order prohibiting reapplication for reinstatement for ten years.* Dawkins argues that, because of his age, this "order amounts to a death sentence insofar as any hope [that he] has for a return to the profession." Dawkins was sixty-five years old at the time he was suspended and seventy-two years old when the single justice denied his second petition for reinstatement and issued this order. The order is justified given the hearing panel's finding that Dawkins had engaged in legal work (the representation of his wife in a summary process action) while suspended, and because he continued to hold himself out as an attorney in other respects (by maintaining a listing as an attorney in a telephone directory and by accepting $600, which he later returned, from an individual who engaged him to perform certain legal services in a criminal matter). See *Matter of Waitz, supra* at 307. See also S.J.C. Rule 4:01, § 17 (8), as appearing in 425 Mass. 1321 (1997); S.J.C. Rule 4:01, § 18 (4), as appearing in 425 Mass. 1325 (1997) (rules in effect when the single justice decided this case and issued this order).

The fact that an attorney engages in misconduct later in life does not shield him or her from a necessary and appropriate sanction.

> *Order denying reinstatement affirmed.*
>
> *Order prohibiting petitioner's reapplication for reinstatement for ten years affirmed.*

*Willie J. Davis* for the petitioner.

*Nancy E. Kaufman*, Assistant Bar Counsel.

---

[6]The hearing panel, whose job it was to assess the credibility of the witnesses and the evidence presented by both sides, rejected Dawkins's version of the events surrounding his actions during his suspension. The panel's findings were warranted by the evidence and are given significant weight on appeal. *Matter of Gordon*, 385 Mass. 48, 55 (1982).

[7]We reject Dawkins's implication that, because the single justice declined to grant him permission to work as a paralegal, he has been prevented from maintaining current competence in the law.