NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12073

IN THE MATTER OF DAVID ZAK.

April 10, 2017.

Attorney at Law, Disciplinary proceeding, Commingling of funds, Fee-sharing agreement, Advertising, Disbarment.

The respondent attorney, David Zak, appeals from a judgment of a single justice of this court disbarring him from the practice of law.[1] We affirm.

Background. Bar counsel filed a seven-count petition for discipline with the Board of Bar Overseers (board) against the respondent arising out of the respondent's solicitation and handling of a substantial number of mortgage loan modification cases over more than a four-year period. See note 10, infra. Count one alleged that the respondent made payments to others to recommend his services and to solicit professional employment for the respondent from prospective clients;[2] shared fees with nonlawyers;[3] failed to instruct and supervise his employees and

---

[1] This bar discipline appeal is subject to S.J.C. Rule 2:23 (c), 471 Mass. 1303 (2015). Pursuant to the rule, we dispense with oral argument, and decide the case on the basis of the materials filed by the respondent.

[2] These acts were alleged to be in violations of Mass. R. Prof. C. 7.2 (c), as appearing in 430 Mass. 1306 (1999); Mass. R. Prof. C. 7.3 (d) & (f), as amended, 431 Mass. 1302 (2000); and Mass. R. Prof. C. 8.4 (a), 426 Mass. 1429 (1998).

[3] This act was alleged to be in violation of Mass. R. Prof. C. 5.4 (a), as appearing in 430 Mass. 1303 (1999).

agents adequately;[4] and engaged in the practice of law with a person who was not a lawyer.[5] Count two charged that the respondent made false and misleading advertisements about himself, his law firm, and his loan modification services, in Massachusetts and other jurisdictions.[6] Count three alleged that the respondent charged and collected advance fees for loan modification services, in violation of Federal and State statutes and regulations, and that the fees he charged were either excessive or illegal, or both.[7] Count four alleged that the respondent provided or caused to be provided to clients false, deceptive or misleading information about his loan modification services.[8] Counts five, six, and seven alleged misconduct during the respondent's handling of three specific loan modification matters, and in connection with bar counsel's investigation of complaints filed by those clients.

The petition was referred to a special hearing officer. After a hearing, at which the respondent was represented by counsel, the hearing officer made detailed findings of fact and conclusions of law against the respondent on all counts, and recommended that the respondent be disbarred. The hearing officer also recommended that the respondent be required to make restitution. The respondent appealed to the board, focusing

---

[4] This failure was alleged to be in violation of Mass. R. Prof. C. 5.3 (a), (b) & (c), 426 Mass. 1408 (1998).

[5] This act was alleged to be in violation of Mass. R. Prof. C. 5.4 (b), as appearing in 430 Mass. 1303 (1999).

[6] Count two alleged violations of Mass. R. Prof. C. 7.1, as appearing in 430 Mass. 1305 (1999); Mass. R. Prof. C. 7.2 (a), as appearing in 430 Mass. 1306 (1999); and Mass. R. Prof. C. 8.4 (c), 426 Mass. 1429 (1998). The petition for discipline also charged violation of the rules of professional conduct in Virginia, New York, Pennsylvania, and Rhode Island.

[7] Count three alleged violations of Mass. R. Prof. C. 1.5 (a), as appearing in 459 Mass. 1301 (2011). The petition for discipline also charged violation of rules of professional conduct of Rhode Island.

[8] Count four alleged violation of Mass. R. Prof. C. 1.1, 426 Mass. 1308 (1998); Mass. R. Prof. C. 1.2 (c), 426 Mass. 1310 (1998); Mass. R. Prof. C. 1.4 (b), 426 Mass. 1314 (1998); Mass. R. Prof. C. 5.3 (a) & (b), 426 Mass. 1408 (1998); and Mass. R. Prof. C. 8.4 (a) & (c).

primarily on the disciplinary recommendation.  The board adopted the hearing officer's findings of fact and conclusions of law, and voted to recommend that the respondent be disbarred. Although it declined to recommend that restitution be ordered, the board observed that failure to make restitution reflects poorly on an attorney's moral fitness to practice law.  The board thereafter filed an information in the county court, pursuant to S.J.C. 4:01, § 8 (6), as appearing in 453 Mass. 1310 (2009).  After a hearing, the single justice concluded that the special hearing officer's findings were supported by substantial evidence, see S.J.C. Rule 4:01, § 8 (5) (a) and (6), and that those findings supported the board's conclusions regarding violations of the disciplinary rules.  She accepted the recommendation of the board as to sanction, and ordered that the respondent be disbarred.

Discussion.  The respondent does not dispute that he engaged in the conduct described in the hearing officer's findings, which were adopted by the board.  We have thoroughly reviewed the record, and agree with the single justice that these findings were supported by substantial evidence.  There is no need to repeat the single justice's detailed discussion here. Quoting the board, the single justice observed that the respondent:

"systematically extracted illegal and excessive fees from numerous vulnerable and desperate clients with deceptive advertisements, misleading contractual arrangements, and deceptive and useless services such as the 'lender benefit analysis' and the 'forensic loan audit.'  In addition, he engaged in unlawful fee-splitting to provide his partner and his employees with the financial incentive to use the machinations to enhance his personal financial interest at the expense of his clients."

We focus instead on the respondent's claim that this misconduct warrants a public reprimand rather than disbarment.  For the reasons that follow, we reject that claim and conclude that disbarment is appropriate.

a.  Specific challenges regarding disciplinary rule violations.  For the most part, the respondent does not dispute the board's determination that his actions violated numerous rules of professional conduct over a period of years.  See notes 2-8, supra.  He does not, for example, dispute that he paid nonlawyers to recommend his services; charged and collected excessive fees; failed to return unearned portions of fees; made

or caused to be made intentionally misleading statements to vulnerable clients about the services he could or would provide; and with respect to one matter, charged and collected advance fees without depositing them in a client trust account and commingled personal and client funds. Instead, he focuses his appeal on three aspects of the misconduct determinations. We conclude that the single justice neither erred nor abused her discretion in rejecting his claims.

1. <u>Advance fees</u>. Both State and Federal law prohibits a lawyer from charging advance fees for mortgage assistance relief services unless the fees are deposited into a client trust account. See 940 Code Mass. Regs. § 25.02 (2) (2007); 12 C.F.R. §§ 1015.5 and 1015.7 (2017). The respondent does not dispute either that he charged advance fees or that the advance fees were not deposited into a client trust account. He argues instead that his conduct did not violate Mass. R. Prof. C. 1.5, as appearing in 459 Mass. 1301 (2011), which he says creates an independent right to collect advance fees for legal services. The single justice correctly rejected that claim. Although the rule does not categorically proscribe collection of advance fees, it expressly prohibits lawyers from "collect[ing] an illegal or clearly excessive fee." Fees charged or collected in violation of Federal or State statutes or regulations are prohibited under rule 1.5 (a). See, e.g., <u>Matter of Dialessi-Lafley</u>, 26 Mass. Att'y Discipline Rep. 133 (2010) (fee illegal where it violated Federal statute prohibiting collection of fees for acting as representative payee). There was no error in the single justice's determination that the respondent violated rule 1.5 (a).

2. <u>Compensation</u>. The respondent does not dispute that, by paying nonlawyers (Elizabeth Reed and others) between $1,000 and $1,500 for referring clients to him, and encouraging them to solicit clients for a fee, he violated Mass. R. Prof. C. 5.4, as appearing in 430 Mass. 1303 (1999), multiple times. He argues only that the particular profit-sharing agreement he had with Reed -- under which he expressly agreed to share with her the fees earned by a business entity and his law firm on loan modification cases -- did not violate the rule. See Mass. R. Prof. C. 5.4 (a) (3).

The limitations on fee sharing contained in rule 5.4 are intended to protect a lawyer's professional independence of judgment. See Mass. R. Prof. C. 5.4, comment 1. See also Restatement (Third) of the Law Governing Lawyers § 10 comment b (2000) (person entitled to portion of fee may attempt to

influence lawyer's services to maximize fees).  The rule also recognizes, however, that lawyers may compensate nonlawyer employees though a profit-sharing arrangement.  See Mass. R. Prof. C. 5.4 (a) (3).  We recognize that there is some support in other jurisdictions for the board's determination that, read in context, rule 5.4 (a) (3) permits a lawyer to share aggregate profits from legal fees with nonlawyer employees, but not profits that are tied to specific clients or cases.  See, e.g., American Bar Association Standing Comm. on Ethics and Prof. Responsibility, Formal Op. 13-464 at 2 (2013) ("exception for firm compensation and retirement plans depends on whether the profits being shared are 'tied to particular clients or particular matters'"), citing E.J. Bennett, E.J. Cohen & M. Wittaker, Annotated Model Rules of Prof. C. 461  (7th ed. 2011).  Contrast In re Disciplinary Proceedings Against Weigel, 342 Wis. 2d 129, 149-150 (2012) (bonus structure based on net profits of specific practice area rather than on net profits of firm's entire practice permissible).  We need not, however, resolve the issue in this case.  As the single justice observed:

> "even if the exception applies to the profit sharing agreement, the respondent's undisputed conduct in paying Reed, and the agents, $1,000 to $1,500 for each client they acquired, and for condoning and encouraging their solicitation of potential clients for a fee, itself clearly violates Mass. R. Prof. C. 5.4."

The single justice did not err in finding that the respondent violated rule 5.4.

3.  False advertising.  The respondent did not challenge in the county court the board's findings that he violated Mass. R. Prof. C. 7.1, as appearing in 430 Mass. 1305 (1999) (prohibiting false or misleading communications about lawyer or lawyer's services).  The single justice, however, considered the issue and properly determined that the respondent violated the rule in myriad ways.  The advertisements were made in States where the respondent neither was admitted to practice nor had business relationships with lawyers who were licensed.  Among other things, the advertisements misrepresented that the respondent was the only lawyer who knew how to obtain permanent loan modifications and that he would obtain trial loan modifications within thirty to sixty days, and they failed to acknowledge that it is the lender that makes modification decisions.  The advertisements additionally misrepresented that the respondent "sued the bank in every case," and that he would "pre-qualify" clients for Federal mortgages at no cost, when the clients were

actually charged a substantial fee.  The advertisements also omitted other significant and relevant information.  In addition, the respondent's Web site misrepresented facts such as the respondent's association with established, experienced attorneys in other jurisdictions; misstated the jurisdictions in which the his firm practiced; and misstated his prior employment, experience, training, and his own firm's tenure.

The board determined, and the single justice agreed, that the advertisements contained false, material, misrepresentations of fact that violated rule 7.1 and Mass. R. Prof. C. 7.2 (a), as appearing in 430 Mass. 1306 (1999) (communication of services), and Mass. R. Prof. C. 8.4 (c), 426 Mass. 1429 (1998) (prohibiting dishonesty, fraud, deceit and misrepresentation).  On the evidence before it, the board was warranted in rejecting the respondent's claims -- which he presses on appeal -- that the misrepresentations were "mere puffery," or inadvertent or sloppy use of language.  As the single justice's decision makes plain, there was substantial evidence to support the board's determination that the statements included deliberate falsehoods concerning the respondent's firm, and the results that he would be able to achieve.  There need not be evidence that a client was misled or deceived to establish a violation of the rules of professional conduct.  See Matter of Angwafo, 453 Mass. 28, 35 (2009) (reliance not required).[9]

b.  Sanction.  The rules of professional conduct, and the disciplinary proceedings that accompany their violation, exist to "protect the public and maintain its confidence in the integrity of the bar and the fairness and impartiality of our legal system."  Matter of Curry, 450 Mass. 503, 520-521 (2008).  Accordingly, "[t]he appropriate level of discipline is that which is necessary to deter other attorneys and to protect the public."  Id. at 530.  While that determination ultimately is for this court, we, like the single justice, give deference to

---

[9] We decline to consider the respondent's claim that the board erred in allowing bar counsel's prehearing motion to establish, on the basis of issue preclusion, certain facts concerning the respondent's association with Reed.  See Loan Modification Group, Inc. v. Reed, 694 F.3d 145, 147-148 (1st Cir. 2012) (jury determined that Reed and respondent agreed to enter into loan modification business together; and that respondent formed Loan Modification Group, Inc., as entity that would conduct "partnership business together with Reed").  The respondent did not raise this claim before the single justice.  See Matter of Hoicka, 442 Mass. 1004, 1007 n.5 (2004).

"the board's recommendation, its experience, and its expertise to try and dispose of disciplinary matters uniformly." Matter of Eisenhauer, 426 Mass. 448, 455, cert. denied, 524 U.S. 919 (1998). See Matter of Foley, 439 Mass. 324, 333 (2003). We agree with the single justice that the board's recommended sanction of disbarment is appropriate in this case.

The respondent's misconduct involved repeated and multiple ethical violations in connection with loan modification and mortgage foreclosure cases over a number of years.[10] We acknowledge that a single violation of one of the disciplinary rules at issue here might typically result in an admonition, public reprimand, or, perhaps, a term suspension. But it is well established that disciplinary violations are not viewed in isolation. We consider instead the "cumulative effect of the several violations committed by the respondent." Matter of Palmer, 413 Mass. 33, 38 (1992). See Matter of Crossen, 450 Mass. 533, 574 (2008) ("[c]umulative and wide-ranging misconduct may warrant the sanction of disbarment, even if the individual instances of unethical conduct would not warrant so severe a sanction"); Matter of Saab, 406 Mass. 315, 326-327 (1989). As the board observed, "[e]ven minor violations, when aggregated, can result in a substantial sanction exceeding what each alone would receive."

The repeated nature of the respondent's misconduct, over a period of years, involving hundreds of economically, educationally, and linguistically disadvantaged clients in

---

[10] At the hearing before the single justice, it was not disputed that the respondent had more than 500 loan modification clients; that between forty and sixty of them have filed claims with the Attorney General; and that approximately twenty clients filed complaints with the Massachusetts Commission Against Discrimination. The respondent's counsel suggested that restitution of the amounts at issue would be in the hundreds of thousands of dollars.

Clients of the respondent who were harmed by his dishonest conduct may be able to obtain reimbursement for their losses from the Clients' Security Board, established pursuant to S.J.C. Rule 4:04, § 1, as amended, 428 Mass. 1301 (1998). We understand that, as a matter of course, the board and bar counsel inform victimized clients of that possibility in appropriate cases, and we ask that they ensure that the appropriate victims in this case are so informed. We express no view here as to whether any such claimants in this case ought to be compensated by the Clients' Security Board.

strained financial circumstances, evidenced by threatened foreclosure of their homes, warrants a substantial sanction. See Matter of Lupo, 447 Mass. 345, 358 (2006) (pattern of self-dealing and self-enrichment at expense of elderly, unsophisticated and vulnerable warranted indefinite suspension). See also Matter of Greene, 476 Mass. 1006, 1010-1011 (2016) (accepting board's recommendation of indefinite suspension for misconduct in connection with residential mortgage foreclosure "rescue transactions"). In addition, the respondent has refused to return unearned fees. See Matter of Sharif, 459 Mass. 558, 571 (2011) (three-year suspension for conduct including intentional misuse of client fees, with aggravating and mitigating factors). Through the date of the hearing before the single justice, the respondent continued to practice law, notwithstanding the recommendation of disbarment. Matter of Cobb, 445 Mass. 452, 480 (2005). In at least two matters, the respondent advised clients who were not facing foreclosure to stop making mortgage payments (in one case, so the client could pay the respondent), see Matter of Lupo, supra at 359, and they were forced into foreclosure and lost their homes. See Matter of Pike, 408 Mass. 740, 745 (1990).

Although there appears to be no Massachusetts case involving precisely the same misconduct in connecting with loan modification clients, the misconduct in Matter of Cammarano, 29 Mass. Att'y Discipline Rep. 82 (2013), is similar. In that case, the attorney was indefinitely suspended for misconduct in connection with five immigration matters. Id. at 85. In each matter, the respondent agreed to file certain immigration documents, set a flat fee for services, and demanded payment of retainers and filing fees before beginning work. Id. at 88. In each case, the immigration documents either were not filed or were returned because the filing fee was incorrect. Id. In each case, the board found that the respondent intentionally misrepresented the status of the matter to the client. Id. Eventually, successor counsel was able to obtain the desired result in four of the cases; the fifth case was still pending at the time of the hearing. Id. The respondent in that case refused to refund any portion of the fees. Id. The single justice concluded an indefinite suspension was warranted because:

> "the respondent neglected multiple client matters, over a period of several years, and deliberately and knowingly made misrepresentations to those clients concerning the status of their cases. He drafted fee agreements which, by stating that retainers were nonrefundable, on their faces

violated the rules of professional conduct, and was solely responsible for enforcement of his firm's improper no-refund policy; he has continued to refuse to refund any of the fees, notwithstanding the involvement of bar counsel. . . .

"Considered with the other conduct found by the board, see Matter of Palmer, 413 Mass. [at 38] (we consider 'the cumulative effect of the several violations committed by the respondent'), including the respondent's refusal to acknowledge any wrongdoing, his attempts to blame employees for his actions, his statements that are inconsistent with the record and that the hearing officer found blatantly noncredible, and his treatment of particularly vulnerable clients, I have little doubt that indefinite suspension is the appropriate sanction in this case, in order to preserve trust and confidence in the legal profession."

Id. at 105-106. We agree that the respondent's misconduct in this case is comparable to, but more egregious than, the attorney's misconduct in Cammarano. We therefore accept the board's recommendation that disbarment is appropriate.[11]

As the hearing officer, the board, and the single justice all properly recognized, there were no factors that could be weighed in mitigation of the respondent's misconduct. Factors that we have considered as not rising to the level of "special

---

[11] The single justice additionally found that, with respect to one client, the respondent charged a "retainer" rather than a "flat fee," and failed to deposit it into his client trust account. He also failed to provide the notices, bills, and accountings before withdrawing funds, as required by the rules of professional conduct, commingled client funds with his own, and converted the funds to his own use. Although the respondent continues to press his claim that the payment was a "flat fee" that properly could be deposited into an operating account, the hearing officer, the board, and the single justice concluded that, based on the language of the fee agreement, the payment was a retainer. On that basis, the single justice reasoned that the respondent's deliberate use of those unearned client funds, with deprivation resulting and without restitution to the client, merits a presumptive sanction of disbarment by itself. See, e.g., Matter of Sharif, 459 Mass. 558, 565 (2011). The respondent's unadorned statement in his memorandum that a "flat fee" was involved does not rise to the level of appellate argument.

mitigating factors" include a "long and distinguished career of public service and . . . many pro bono services," Matter of Finneran, 455 Mass. 722, 735 (2010); the absence of "evil motive or racial animus," id. at 736; a good reputation in the community, Matter of Moore, 442 Mass. 285, 294 (2004); and services to an underserved population, id. Although the respondent claims that he helped "hundreds" of clients avoid foreclosure, the record does not establish how many or to what extent those clients many have been aided, whether they were charged excessive fees for services that had little or no value to them, or whether the services could have been obtained for less or no cost. In any event, we do not weigh as a factor in mitigation that an attorney properly performed legal services for some clients. As the single justice observed, that "is simply the type of conduct expected of an ordinary reasonable attorney." See Matter of Dawkins, 412 Mass. 90, 96 (1992), S.C., 432 Mass. 1009 (2000) ("we are not so pessimistic about the ethics of lawyers as to conclude that a lawyer who conforms to the expected standard of conduct in some respects thereby has established mitigating circumstances"). Although the respondent may have served some clients in accordance with his professional obligations, "that fact alone does not overcome the harm he visited upon . . . the particular client[s] involved in this case." Id. at 97.

Although we see no factors to be weighed in mitigation, there are multiple factors that the board properly weighed in aggravation. As the board found, the respondent took advantage of economically vulnerable clients; acted for selfish and pecuniary reasons; and failed to acknowledge the wrongfulness of his conduct. He has refused to return unearned fees and has refused to acknowledge that his actions caused clients harm, including the loss of homes through foreclosure. He also failed to comply with discovery orders, both in the disciplinary proceeding and in other proceedings. He has not made restitution. Matter of McCarthy, 23 Mass. Att'y Discipline Rep. 469, 470 (2007).

Conclusion. The primary factor in bar discipline cases is "the effect upon, and perception of, the public and the bar" (citation omitted). Matter of Finnerty, 418 Mass. 821, 829 (2008). Considering the extent of the misconduct, weighing the presence of the factors in aggravation and the absence of factors in mitigation, and giving due deference to the board's recommendation, we conclude there was no error in the single justice's judgment that disbarment is warranted.

<u>Judgment of disbarment
affirmed</u>.


        The case was submitted on the papers filed, accompanied by a memorandum of law.
        <u>Gregory M. Sullivan</u> for the respondent.