## In the Matter of Donal B. Barrett.

Suffolk. May 2, 2006. - August 16, 2006.

Present: Marshall, C.J., Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Attorney at Law,* Disciplinary proceeding, Suspension. *Fiduciary.*

Statement of the standard of review employed by this court in appeals of bar
   discipline cases. [459-460]
The hearing committee of the Board of Bar Overseers did not err in conclud-
   ing that an attorney had no authority to advance a corporation's funds to
   himself to discharge a personal debt [460-462], and the disciplinary sanc-
   tion imposed — a two-year suspension from the practice of law — was not
   markedly disparate from sanctions imposed in comparable cases [462-465].
The respondent in an attorney disciplinary proceeding failed to demonstrate
   that bar counsel acted outside the scope of his authority in investigating
   and prosecuting allegations of the respondent's misconduct. [465-467]

Information filed in the Supreme Judicial Court for the county
of Suffolk on March 7, 2005.

The case was heard by *Greaney,* J.

*Donal B. Barrett,* pro se.

*Robert I. Warner,* Assistant Bar Counsel.

Spina, J. The respondent, Donal B. Barrett, appeals from a
decision of a single justice on an information filed in the county
court by the Board of Bar Overseers (board) accepting its
recommendation that the respondent be suspended from the
practice of law for two years. For the reasons that follow, we
affirm.

1. *Background.* The following facts are drawn from the find-
ings of a hearing committee that were adopted by an appeal
panel of the board, and eventually by the full board.

In 1995, NetFax Incorporated (NetFax) was organized under
the laws of Delaware to develop and commercially exploit new
technologies for Internet facsimile transmissions. It was founded
by, among others, the respondent, who has been a member of

the bar of the Commonwealth since June 20, 1973. As of August, 1996, the respondent was NetFax's chief executive officer and its sole director, which imposed on him fiduciary obligations to the company. He also provided NetFax with some legal services, including those related to ensuring that the company complied with Federal and State securities laws. The respondent did not bill NetFax for his legal services, nor was he specifically compensated for those services.

In 1996, the respondent opened a checking account in the name of "NetFax Incorporated" at US Trust. He was the sole signatory on the account, which enabled him to pay NetFax's expenses. Bank statements were sent to the respondent's home, rather than to NetFax's corporate offices. In March, 1996, Victor Lombardi invested $50,000 in NetFax. In return for receiving "Founders" shares of the company, Lombardi agreed to be responsible for raising equity capital for NetFax. Between 1996 and 1998, Lombardi invested an additional $4,500,000 in NetFax.

On April 9, 1996, the Maine Supreme Judicial Court entered a mandate affirming a lower court's order foreclosing on an interest held by the respondent and his late wife in property located in Sorrento, Maine (Sorrento property). The respondent was given ninety days to redeem the property, which, he believed, could be done for $130,000. In early July, 1996, the respondent approached Lombardi about a possible loan in that amount, but then did not pursue the matter. Instead, the respondent decided to use funds from NetFax to redeem the Sorrento property from the mortgage company.

The respondent went to US Trust on July 24, 1996, and used $130,000 of NetFax's funds to obtain a "counter check" made out to "US Trust." He then used the counter check, rather than a preprinted NetFax check, to purchase a bank check in the amount of $130,000, made out to the mortgage company and its legal counsel. The respondent delivered the check to the mortgage company's legal counsel in order to redeem the Sorrento property. The mortgage company accepted the $130,000, but deemed it insufficient to redeem the property and, therefore, refused to discharge the mortgage. The respondent did not obtain the consent of or otherwise inform the shareholders of NetFax,

or its principals, that he had used the company's money to attempt to satisfy a personal obligation.

By December, 1996, the respondent had been unable to restore the $130,000 that he had taken from the NetFax account. He knew that in early to mid-1997, the company's outside auditors would be reviewing NetFax's accounts. The respondent transmitted a facsimile to Lombardi regarding the " '$130,000 problem' that was the subject of some discussion between [them]." The respondent falsely represented to Lombardi that the mortgage company would not agree to "any further extensions of the debt obligation beyond December 31 on any terms." He asked Lombardi to lend him $130,000 as a "bridge first-mortgage loan" to be secured by a first mortgage on the Sorrento property and the right to convert the loan into shares of NetFax stock. The respondent falsely represented to Lombardi that the $130,000 loan would be used to pay off the mortgage on the Sorrento property. He did not tell Lombardi that he had used funds from NetFax in July, 1996, to pay this debt obligation, that he was involved in a dispute with the mortgage company over the redemption amount, or that he would use the loan from Lombardi to restore funds to NetFax before its financial records were audited. On December 27, 1996, Lombardi had $130,000 transferred to the respondent's personal bank account. On December 31, 1996, the respondent used the loan from Lombardi to repay NetFax.

In June, 1997, the respondent prepared for NetFax's auditors a "reconciliation report" showing withdrawals from the NetFax account at US Trust during 1996. He also prepared a separate "schedule of deposits" made to that account for the same time period. In the reconciliation report, the respondent falsely represented that the $130,000 he had withdrawn in July, 1996, to redeem the Sorrento property was a payment to Acorn Computers, Inc. (Acorn), a company with which NetFax was doing business. In the schedule of deposits, the respondent falsely identified the deposit of $130,000 made in December, 1996, as a "[r]eturn of deposit" from Acorn. He knowingly made these false representations to cover up the fact that he had taken $130,000 from NetFax for his personal use.

In the late summer of 1998, a disagreement arose between

the respondent and Lombardi over a financing venture, and the respondent was voted out as chief executive officer and director of NetFax. Lombardi succeeded the respondent as sole director. On July 8, 1999, Lombardi filed a complaint against the respondent with the Office of Bar Counsel (bar counsel), alleging that the respondent had misappropriated funds from NetFax and had made false representations to Lombardi in December, 1996, regarding the purpose of the loan that the respondent had sought from him.

Bar counsel commenced formal proceedings against the respondent by filing a petition for discipline on September 11, 2002. In count one of the petition, bar counsel alleged that the respondent had improperly used client funds to pay a personal debt. In the alternative, if the funds taken by the respondent were to be considered a loan, then he had improperly entered into a business transaction with his client. In count two of the petition, bar counsel alleged that the respondent had made false representations in order to induce Lombardi to lend him money, and then the respondent repaid the loan with Lombardi's own funds. Bar counsel further alleged that the respondent created false and misleading documents, filed a false amendment to his 1997 Federal tax return, and provided bar counsel with false documents. The respondent denied the substantive allegations of misconduct, and several hearings were held before a hearing committee of the board.

On July 14, 2004, the hearing committee issued its report. It found that the respondent had an attorney-client relationship with NetFax and that, as its chief executive officer and sole director, he also had a fiduciary obligation to the company, including a duty not to appropriate NetFax funds for his own personal benefit. The hearing committee rejected the respondent's claim that the $130,000 was an "advance" permissible under Delaware law, where NetFax was incorporated. It found that the respondent's conduct in concealing his use of NetFax funds for personal purposes belied his assertion that the use was proper and prevented ratification or nullification of the transaction by the shareholders.

The hearing committee concluded that the respondent's use of NetFax's funds for his personal benefit violated S.J.C. Rule

3:07, Canon 1, DR 1-102 (A) (4), as appearing in 382 Mass. 769 (1981) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (6), as appearing in 382 Mass. 769 (1981) (lawyer shall not engage in conduct adversely reflecting on fitness to practice law); S.J.C. Rule 3:07, Canon 7, DR 7-101 (A) (1), as appearing in 382 Mass. 784 (1981) (lawyer shall not intentionally fail to seek lawful objectives of client); S.J.C. Rule 3:07, Canon 7, DR 7-101 (A) (2), as appearing in 382 Mass. 784 (1981) (lawyer shall not intentionally fail to carry out contract of employment); S.J.C. Rule 3:07, Canon 7, DR 7-101 (A) (3), as appearing in 382 Mass. 784 (1981) (lawyer shall not intentionally prejudice or damage client during professional relationship); S.J.C. Rule 3:07, Canon 9, DR 9-102 (A), as appearing in 419 Mass. 1303 (1995) (lawyer shall deposit client or fiduciary funds in designated accounts); and S.J.C. Rule 3:07, Canon 9, DR 9-102 (B), as appearing in 419 Mass. 1303 (1995) (lawyer shall notify client of receipt of funds, maintain complete record of funds, and deliver funds to client as requested).[1] The hearing committee further concluded that the respondent's creation of a false and misleading reconciliation report and schedule of deposits violated DR 1-102 (A) (4); DR 1-102 (A) (6); DR 7-101 (A) (1); DR 7-101 (A) (2); and DR 7-101 (A) (3). Finally, the committee concluded that the respondent's false statements to Lombardi in December, 1996, regarding the purpose of the loan he sought from Lombardi violated DR 1-102 (A) (4) and DR 1-102 (A) (6).

The hearing committee considered mitigating and aggravating factors with respect to the imposition of disciplinary sanctions. In mitigation, the hearing committee found that the respondent did not have an attorney-client relationship with Lombardi. In aggravation, the committee found that the respondent had a history of prior discipline. In particular, he had received an admoni-

---

[1]The Massachusetts Rules of Professional Conduct became effective on January 1, 1998, replacing the Massachusetts Canons of Ethics and Disciplinary Rules Regulating the Practice of Law (Disciplinary Rules). See S.J.C. Rule 3:07, as appearing in 426 Mass. 1303 (1998). As the respondent's alleged misconduct occurred prior to January 1, 1998, the Disciplinary Rules are applicable to this case. See *Matter of Bailey*, 439 Mass. 134, 145 n.13 (2003).

tion in 1994 for commingling client and personal funds and for negligently spending a client's retainer, and that the respondent had demonstrated a lack of understanding or acknowledgment of the requirements of the ethical rules and the nature of his misconduct. The hearing committee recommended that the respondent be suspended from the practice of law for seven years. The respondent filed an appeal of the hearing committee's decision in which he requested that the board modify certain of the committee's findings of fact and conclusions of law, and suggested that the appropriate sanction for his misconduct was a public reprimand.

On December 3, 2004, an appeal panel filed its report, adopting the hearing committee's findings of fact, rejecting certain of the committee's conclusions of law, and modifying the recommended disciplinary sanction. As to the respondent's claim that his use of $130,000 in NetFax funds was not a misappropriation of funds, but rather, an "advance" that he was entitled to make to himself in his capacity as chief executive officer of NetFax, the appeal panel pointed out that the hearing committee had not believed the respondent's testimony in support of this claim. Based on its independent review of the record, the appeal panel concluded that there was no basis for disturbing the hearing committee's credibility determination in this regard. The panel agreed with the hearing committee that the respondent "performed legal services for NetFax from time to time," but it modified the committee's conclusions of law by striking the violations of Canon 7 and Canon 9 because the core of the respondent's work for NetFax had been as its chief executive officer and director. The appeal panel concluded that any legal services performed by the respondent for NetFax were incidental to the larger, more central function of running the company. The appeal panel agreed with the hearing committee that the respondent had intentionally misappropriated funds that he had held as a fiduciary and that he had made false entries and misrepresentations to hide such misuse. It stated that the hearing committee had appropriately considered the respondent's prior misconduct as an aggravating factor in these proceedings. The appeal panel recommended that the respondent be suspended from the practice of law for two years.

The board adopted the report of the appeal panel and filed an information with the county court pursuant to S.J.C. Rule 4:01, § 8 (4), as appearing in 425 Mass. 1309 (1997), recommending that the respondent be suspended for two years. The respondent appealed to a single justice who concluded that all of the facts in the hearing committee report were supported by the record and the evidence the committee found credible. He further concluded that the board's disciplinary recommendation should be accepted. Accordingly, on April 19, 2005, the single justice entered an order suspending the respondent from the practice of law for two years. Both the respondent and bar counsel filed notices of appeal with the full court.

In this appeal, the respondent now claims that (1) he arguably possessed the authority under Delaware law to use $130,000 of NetFax's funds for his own purposes; (2) the finding of the hearing committee that the transfer of funds was not intended as an "advance" was not supported by substantial evidence; (3) the board's disciplinary sanction of a two-year suspension from the practice of law was "markedly disparate" from sanctions in comparable cases; and (4) the disciplinary proceedings were characterized by prosecutorial irregularities and misconduct. Apart from the hearing committee's finding that the $130,000 taken by the respondent was not an "advance" from NetFax, the respondent does not challenge the other factual findings made by the committee. Bar counsel seeks to have the respondent indefinitely suspended from the practice of law. We now affirm the order of suspension for two years.

2. *Standard of review.* The standard of review for appeals of bar discipline cases is well established. "[A]lthough not binding on this court, the findings and recommendations of the board are entitled to great weight." *Matter of Fordham*, 423 Mass. 481, 487 (1996), cert. denied, 519 U.S. 1149 (1997), citing *Matter of Hiss*, 368 Mass. 447, 461 (1975). "[S]ubsidiary facts found by the [b]oard and contained in its report filed with the information shall be upheld if supported by substantial evidence, upon consideration of the record." S.J.C. Rule 4:01, § 8 (4). " 'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6). "While we review the entire record and consider

whatever detracts from the weight of the board's conclusion, as long as there is substantial evidence, we do not disturb the board's finding, even if we would have come to a different conclusion if considering the matter de novo." *Matter of Segal*, 430 Mass. 359, 364 (1999).

3. *Transfer of funds.* The respondent contends that, under Delaware law, he arguably had the authority to advance to himself $130,000 from NetFax's account in order to discharge a personal debt obligation. As such, he asserts, the hearing committee had no basis for concluding that he intended to misappropriate those funds. The flaw in the respondent's argument is that the hearing committee simply did not find credible his belief that he had the authority to take such corporate funds for his personal use in the first instance.

Arguments hinging on credibility determinations made by the hearing committee generally fall outside the proper scope of our review. See *Matter of Saab*, 406 Mass. 315, 328 (1989). The committee is "the sole judge of the credibility of the testimony presented at the hearing." *Id.*, quoting S.J.C. Rule 4:01, § 8 (3), as appearing in 381 Mass. 784 (1980) (now § 8 [4]). See *Dowd v. Director of the Div. of Employment Sec.*, 390 Mass. 767, 770 (1984) ("The resolution of conflicts in testimony is one aspect of the fact-finding process in an administrative proceeding"); *Matter of Hachey*, 11 Mass. Att'y Discipline Rep. 102, 103 (1995) (hearing committee acts like jury in making credibility determinations that will not be rejected unless it can be "said with certainty" that finding was "wholly inconsistent with another implicit finding"). The committee is not obligated to credit the respondent's testimony as true even if it is uncontradicted. See *Matter of Saab, supra*; *Northeastern Malden Barrel Co.* v. *Binder*, 341 Mass. 710, 712 (1961).

The hearing committee found that the respondent's conduct in concealing his appropriation of NetFax funds belied his assertion that such use was authorized. This credibility determination was entirely within the province of the committee and will not be overturned by this court. Notwithstanding the respondent's professed intent to return the $130,000 to the NetFax account within a few weeks, his concealment of the transaction suggested an awareness, on some level, that the appropriation

of corporate funds for personal use, for however brief a period of time, was not authorized. His conduct prevented the shareholders of NetFax from either ratifying or voiding a financial transaction that the respondent, himself, has characterized as one of "self-dealing." The respondent has pointed to no legal authority in Delaware that would sanction the appropriation of corporate funds for personal use, particularly where such a financial transaction has been concealed from corporate shareholders.

In connection with the respondent's assertion that he had the authority to "borrow" $130,000 from NetFax's account is his claim that there was insufficient evidence in the record to support the hearing committee's finding that such transaction was not an "advance" from the company. The respondent contends that the committee's characterization of the transfer was based on four subsidiary findings: (1) a "counter check," rather than a preprinted NetFax check, was used to effect the transfer of $130,000; (2) the monthly bank statements for NetFax's accounts were being sent to the respondent's home address; (3) the December, 1996, repayment of $130,000 to NetFax was characterized as a "return of deposit," rather than a "return of advance"; and (4) the respondent failed to disclose his withdrawal to any of his NetFax associates and subsequently attempted to conceal the transfer of funds. The respondent claims that all of these findings were open to multiple interpretations and did not necessarily suggest an underhanded motive. Further, the respondent argues that, when considered in its entirety, the record does not show that he intended permanently to deprive NetFax of the $130,000 that he removed from its account.

In essence, the thrust of the respondent's position is that because the hearing committee did not believe his explanation as to the intended character of the $130,000 transfer of funds, then the committee's findings were not supported by substantial evidence. Based on our review of the record, we conclude that the disputed finding was made on ample evidence and was based in large part on the credibility determinations of the hearing committee. The committee was in the best position to make such determinations, having heard and observed the witnesses firsthand, and we do not disturb those findings. See *Matter of*

*Abbott*, 437 Mass. 384, 394 (2002); *Matter of Saab, supra* at 328. Moreover, contrary to the respondent's assertion, the appeal panel specifically stated that it had undertaken an independent review of the record when assessing the validity of the hearing committee's findings. While the respondent purports to have little idea why his testimony was rejected, particularly where, in his mind, he provided the hearing committee with a perfectly rational and plausible explanation for his conduct, the committee simply did not believe his version of events. It was the prerogative of the hearing committee to make that determination, and nothing in the record suggests that it should be overturned by this court.

We add that, with respect to the misappropriation of corporate funds, the board modified the hearing committee's determination by concluding that the respondent's misconduct was limited to violations of DR 1-102 (A) (4) and (6).[2] Nothing in this Disciplinary Rule suggests that it only governs the respondent's conduct if he intended *permanently* to misappropriate, rather than "temporarily borrow" and then repay, the $130,000 in Net-Fax funds. As occurred here, engaging in conduct that is dishonest or deceitful, or that adversely reflects on an attorney's fitness to practice, will suffice.

4. *Appropriateness of sanction.* When reviewing a disciplinary sanction imposed by a single justice, we inquire whether the sanction "is markedly disparate from judgments in comparable cases." *Matter of Finn*, 433 Mass. 418, 423 (2001). See *Matter of Kerlinsky*, 428 Mass. 656, 664, cert. denied, 526 U.S. 1160 (1999); *Matter of Alter*, 389 Mass. 153, 156 (1983). "[O]ur review of the single justice's decision is de novo, but tempered with substantial deference to the board's recommendation." *Matter of Foley*, 439 Mass. 324, 333 (2003). See *Matter of Finn, supra.* We add that it is entirely appropriate for this court to consider the cumulative effect of multiple violations committed by a respondent. See *Matter of Tobin*, 417 Mass. 81, 88 (1994); *Matter of Palmer*, 413 Mass. 33, 38 (1992).

Ultimately, we decide each bar discipline case "on its own merits and every offending attorney must receive the disposition

[2]Supreme Judicial Court Rule 3:07, Canon 1, DR 1-102, as appearing in 382 Mass. 769 (1981).

most appropriate in the circumstances." *Matter of the Discipline of an Attorney*, 392 Mass. 827, 837 (1984). The overriding consideration in bar discipline is "the effect upon, and perception of, the public and the bar." *Matter of Kerlinsky, supra,* quoting *Matter of Finnerty*, 418 Mass. 821, 829 (1994). "We must consider what measure of discipline is necessary to protect the public and deter other attorneys from the same behavior." *Matter of Concemi*, 422 Mass. 326, 329 (1996).

The respondent contends that the disciplinary sanction imposed by the single justice, a two-year suspension from the practice of law, was "markedly disparate" from sanctions imposed in comparable cases, of which there are few. The respondent points out that his alleged misbehavior was of a "private" nature, and did not occur in connection with the practice of law. He further asserts that such misbehavior was not of a demonstrably criminal character, it did not interfere with the administration of justice, and it was not preceded or accompanied by any "meaningful" aggravating factors. As such, the respondent argues that the appropriate sanction was, at most, a public reprimand or admonition. Bar counsel, on the other hand, contends that an indefinite suspension from the practice of law is the appropriate sanction for a lawyer who intentionally converts nonclient fiduciary funds to his own use, resulting in an actual deprivation of corporate assets.

The presumptive sanction for conversion or misappropriation of client funds is disbarment or indefinite suspension. See *Matter of Schoepfer*, 426 Mass. 183, 186-187 (1997), and cases cited. This disciplinary sanction is appropriate where "an attorney intended to deprive the client of funds, permanently or temporarily, or [where] the client was deprived of funds (no matter what the attorney intended)." *Id.* at 187. See *Matter of the Discipline of an Attorney, supra* at 836. Here, the appeal panel departed from this standard by distinguishing between the misappropriation of client funds and nonclient funds, concluding that the respondent's misconduct warranted a lesser sanction because the core of his work for NetFax had been as its chief executive officer and sole director. In the panel's opinion, the respondent "was quintessentially [NetFax's] manager, not its counsel, and any legal services he performed were incidental to

the larger, more central function of running the business." Therefore, the appeal panel recommended a two-year suspension.

We agree that the $130,000 taken by the respondent from NetFax's account did not constitute a misappropriation of client funds while the respondent was engaged in the practice of law. Nonetheless, as chief executive officer and sole director of Net-Fax, the respondent had a fiduciary obligation to the company, and he breached it. See *Chelsea Indus., Inc.* v. *Gaffney*, 389 Mass. 1, 11 (1983) (senior executives are considered corporate fiduciaries and owe their company duty of loyalty); *Geller* v. *Allied-Lyons PLC*, 42 Mass. App. Ct. 120, 122 (1997) ("Under Massachusetts law, officers and directors owe a fiduciary duty to protect the interests of the corporation they serve"). Moreover, "[t]he most fundamental duty which a lawyer owes the public is the duty to maintain the standards of personal integrity upon which the community relies. The public expects the lawyer to be honest and to abide by the law." ABA Standards for Imposing Lawyer Sanctions § 5.0 Introduction (1991). The respondent did not stop being a lawyer merely because he was operating in a corporate capacity, and as such, he was expected to uphold the high moral standards and ethical obligations of the legal profession.

We reiterate that the recommendation of the board "is entitled to substantial deference." *Matter of Tobin*, 417 Mass. 81, 88 (1994). See *Matter of Fordham*, 423 Mass. 481, 487 (1996). This court and the board have treated the misappropriation of client funds more severely than the misappropriation of nonclient funds. See *Matter of Goldstone*, 445 Mass. 551, 566-567 (2005) (attorney who converted client funds disbarred); *Matter of Johnson*, 444 Mass. 1002, 1004 (2005) (attorney who commingled funds and used client funds for personal expenses indefinitely suspended); *Matter of Schoepfer, supra* at 184, 188 (same); *Matter of Kondel*, 11 Mass. Att'y Discipline Rep. 148, 151-152 (1995) (attorney who converted estate fees disbarred); *Matter of Gleason*, 10 Mass. Att'y Discipline Rep. 141, 143 (1994) (attorney who engaged in fraud and conversion of funds in real estate venture given two-year suspension, rather than disbarment, where misconduct "occurred outside the practice

of law"); *Matter of Jacobson*, 7 Mass. Att'y Discipline Rep. 123, 124-125 (1991) (respondent's misconduct as trustee of realty trust warranted one-year suspension). We recognize that while the moral turpitude associated with each act may be the same, misconduct directly related to the practice of law and, more particularly, to the misuse of client funds, should be treated more harshly. Here, the respondent's misconduct was aggravated by a prior admonition in 1994 for commingling client and personal funds, and for negligently spending a client's retainer. While the respondent views this prior admonition as an "ethical non-event," it was nonetheless a factor for the board's consideration. See *Matter of Garabedian*, 416 Mass. 20, 25 (1993) (prior misconduct supports more severe sanction, otherwise misconduct "would count for nothing"); *Matter of Dawkins*, 412 Mass. 90, 96 (1992) (past misconduct, even if unrelated to current charges, is important factor in determining level of discipline). We conclude that the board's recommended sanction of a two-year suspension from the practice of law was appropriate and not "markedly disparate" from sanctions imposed in comparable cases.

5. *Prosecutorial misconduct.* The respondent contends that prosecutorial irregularities and misconduct on the part of bar counsel have cast doubts on the validity and integrity of the underlying disciplinary proceedings. He vigorously argues that a petition for discipline should not have been filed against him in the first instance. Moreover, the respondent takes great issue with, among other things, the manner in which bar counsel investigated and subsequently handled allegations that the respondent had repaid the $130,000 loan from Lombardi with shares of Lombardi's stock (being held by another corporate entity), rather than with shares of the respondent's own stock. The respondent claims that bar counsel's conduct was egregious and tainted the entire disciplinary process.

Pursuant to S.J.C. Rule 4:01, § 7 (1), as appearing in 425 Mass. 1307 (1997), bar counsel "shall investigate all matters involving alleged misconduct by a lawyer coming to his or her attention from any source, except matters involving alleged misconduct by the bar counsel, assistant bar counsel, or any member of the [b]oard." The Rules of the Board of Bar Over-

seers permit bar counsel a measure of discretion in determining the scope of any investigation and in deciding which matters to prosecute. See rules 2.1-2.7 of the Rules of the Board of Bar Overseers (2006). "When an agency . . . is granted prosecutorial discretion to determine whether to institute formal adjudicatory proceedings, we will interfere with the exercise of that discretion only in cases presenting extraordinary circumstances." *Zora* v. *State Ethics Comm'n*, 415 Mass. 640, 652 (1993). No such extraordinary circumstances appear here.

Bar counsel had an obligation to investigate the allegations of purported misconduct by the respondent set forth in the complaint Lombardi filed with bar counsel. To the extent that bar counsel's conduct may have been overzealous, as perceived by the respondent, we point out that there is no evidence that the hearing committee, the appeal panel, the board, or the single justice found that bar counsel had acted in bad faith or that his conduct had been egregious. The respondent was afforded notice of the charges against him and the opportunity to be heard, to present evidence, and to challenge the evidence presented by bar counsel. He then had the opportunity to appeal from the hearing committee's decision to an appeal panel, the board, a single justice in the county court, and the full court. Where several of the charges leveled against the respondent were not supported by sufficient evidence, they were dismissed.[3] Notwith-

---

[3]The respondent claims that he did not receive appropriate notice of bar counsel's decision to file charges against him pertaining to the respondent's repayment of Lombardi's loan of $130,000 with 220,000 shares of the respondent's NetFax stock. See rule 2.6 of the Rules of the Board of Bar Overseers § 2.6 (2006) (requiring bar counsel to notify respondent of right and obligation to state position with respect to allegations against him within twenty days from date of notice). As a consequence, the respondent asserts that he was unable to demonstrate that such charges were a "sham." We note that in its report, the hearing committee did not mention the respondent's claim that he received inadequate notice of this charge. Moreover, seven months prior to filing the petition for discipline, assistant bar counsel sent a letter to the respondent asking him to contact bar counsel to discuss his case and a disposition of the matter. The respondent, who was immersed in NetFax-related litigation and imminent bankruptcy proceedings, did not respond to the letter. Even if, as the respondent alleges, he purportedly did not receive appropriate notice, the hearing committee dismissed these (and related) charges when it concluded that bar counsel had failed to satisfy its burden of proof with respect to such allegations of misconduct. Bar counsel did not appeal from this determination.

standing the respondent's assertions of prosecutorial irregularities and misconduct, and his expressions of outrage over bar counsel's conduct throughout these proceedings, we conclude that bar counsel acted within the scope of his authority.

6. *Conclusion.* The order of the single justice is affirmed.

*So ordered.*