NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12131

IN THE MATTER OF DAVID M. HASS.


May 31, 2017.


Attorney at Law, Disciplinary proceeding, Suspension.


The respondent attorney, David M. Hass, appeals from the order of a single justice of this court suspending him from the practice of law for two months.[1]  We affirm.

Background.  In early 2013, the respondent settled a client's personal injury claim against the Massachusetts Bay Transportation Authority (MBTA) for $6,600.  Understanding that the settlement would not be paid until approximately July, 2013, the client signed a release of her claim, and the respondent delivered the release to the MBTA.  In late February, 2013, the client informed the respondent that she wanted to obtain an advance on the settlement, and she authorized the respondent to provide information about her claim to suppliers of such services.[2]  From his work with other clients, the respondent was

---

[1] This bar discipline appeal is subject to this court's rule governing such appeals.  See S.J.C. Rule 2:23, 471 Mass. 1303 (2015).  We have reviewed the materials filed.  Pursuant to our rule, we dispense with oral argument.

[2] The parties refer to this arrangement as "lawsuit funding" or "litigation funding."  Others have described similar or related arrangements as "alternative litigation finance" (ALF).  See American Bar Association, Commission on Ethics 20/20, Informational Report to the House of Delegates, at 5 (Feb. 2012).  "Defined most generally, ALF refers to mechanisms that give a third party (other than the lawyer in the case) a financial stake in the outcome of the case in exchange for money

familiar with the process.  He sent a facsimile transmission to an entity, inquiring about potential suppliers for the client.  Eventually, the client obtained three advances from two suppliers, and the respondent received related documentation, as described below:

1.  In late February, 2013, the respondent received a "cash advance agreement" and other documents from Global Financial Credit, LLC (Global) indicating that, in consideration of a "cash advance of $1,025.00" the client assigned a security interest in the proceeds of the MBTA settlement to Global.  The respondent signed and returned documents acknowledging that he would pay Global that amount, together with other fees described in the agreement, from the client's portion of the MBTA settlement.  On March 4, 2013, the respondent received a formal "notice of assignment" from Global.

2.  On or about March 14, 2013, the respondent received documents from Excel Legal Funding (ELF).  At a meeting at the respondent's office, the client executed an "irrevocable letter of instruction," and the respondent signed an "attorney acknowledgment."  Pursuant to the acknowledgment, the respondent agreed that the settlement funds would not be disbursed to the client until ELF was paid in full; acknowledged receipt of the client's letter of instruction; agreed to place the documents in his file; and represented, "to my knowledge the plaintiff has not received any prior cash advances against his/her claim/s."  ELF thereafter gave notice to the respondent that the client had granted it a "security interest and lien" in the amount of $920 from the proceeds of her MBTA claim.  The respondent's file has an ELF lien notice sticker affixed to it.

3.  On or about April 12, 2013, the respondent received a second letter of instruction from Global, signed by the client, as well as a cash advance agreement for $725.  The respondent signed and returned to Global an accompanying acknowledgment representing "that [the client] has NOT previously received a

_____

paid to a party in the case."  Id.  The report indicates that "[c]onsumer ALF suppliers are distinguishable from settlement factoring companies; the former take a partial assignment in a claim that has not yet been settled or reduced to judgment, while the latter purchases a claim that has been reduced to judgment, typically as a result of a judicially approved settlement."  Id. at 6.  We express no view about the propriety of these arrangements.

cash advance against his/her legal claim similar to the attached agreement."

The MBTA paid the $6,600 settlement in late June, 2013, and the respondent deposited the settlement funds into his client trust account. A settlement statement was prepared reflecting the $1,998.00 payoff amount for Global's two cash advances to the client and accompanying fees; the respondent's legal fees and costs of $2,569.30; and the balance, $2,032.70, due to the client. There was no payoff amount indicated for ELF. The respondent disbursed the amounts indicated on July 2 and 3, 2013.

The respondent did not notify ELF of receipt of the MBTA settlement funds. As of July 2, 2013, under the terms of the client's agreement with ELF, approximately $1,265 would have been due. When ELF inquired about the MBTA settlement and learned that the respondent already had disbursed the settlement proceeds to the client, it demanded payment from the respondent. The respondent refused. It was ELF's request that bar counsel investigate that gave rise to these proceedings.[3]

After a hearing, at which the respondent and a witness from ELF testified, a majority of the hearing panel found that the respondent made intentionally false statements to Global and ELF concerning the absence of prior cash advances, in violation of Mass. R. Prof. C. 4.1 (a), 426 Mass. 1401 (1998), and Mass. R. Prof. C. 8.4 (c), 426 Mass. 1429 (1998). The hearing panel unanimously found that the respondent failed to comply with the client's ELF letter of instructions by failing to contact ELF to determine what the client owed to ELF, in violation of Mass. R. Prof. C. 1.2 (a), 426 Mass. 1310 (1998), and Mass. R. Prof. C. 1.3, 426 Mass. 1313 (1998). It also found that the respondent failed to notify ELF that the settlement proceeds had been received, and failed to promptly deliver funds to ELF, in violation of Mass. R. Prof. C. 1.15 (c), as appearing in 440 Mass. 1338 (1998). A majority of the panel recommended a three-month term suspension. Both the respondent and bar counsel appealed.

The board adopted the hearing committee's findings of fact and conclusions of law, but recommended that the respondent receive a public reprimand. At bar counsel's request, the board filed an information in the county court. See Rules of the

---

[3] During the disciplinary investigation, the respondent and ELF agreed to settle ELF's claim for $700.

Board of Bar Overseers § 3.57(a) (2011).  The single justice concluded that the hearing committee's findings, adopted by the board, were supported by the record.  He concluded that a two-month term suspension was warranted.  The respondent appeals.

Discussion.  We begin with the immutable principle that "[t]he most fundamental duty which a lawyer owes the public is the duty to maintain the standards of personal integrity upon which the community relies.  The public expects the lawyer to be honest and to abide by the law." Matter of Barrett, 447 Mass. 453, 464 (2006), quoting American Bar Association, Standards for Imposing Lawyer Sanctions § 5.0 Introduction (1991).  See Matter of Hilson, 448 Mass. 603, 619 (2007).  The respondent's principal argument is that the client's agreements with Global and ELF were either void or voidable, pursuant to G. L. c. 271, § 49, and G. L. c. 140, § 96, and that his own failure to comply with his client's letter of instruction and his separate agreements with ELF and Global, as well as the evident misrepresentations concerning the absence of prior advances contained therein, therefore should be excused.[4]  We reject that proposition.

The single justice correctly observed that the respondent's ethical obligations in these circumstances are independent of the validity, legality, or enforceability of his client's agreements with the suppliers.  See, e.g., Matter of Powers, 26 Mass. Att'y Discipline Rep. 518 (2010) (suspension of one year and one day based on false affirmations concerning insurance coverage and falsified insurance declarations, with aggravating factors); Matter of Lippman, 17 Mass. Att'y Discipline Rep. 381 (2001) (eighteen-month suspension based on failure to disclose existence of prior unrecorded mortgage, and falsified documents and false statements concerning mortgage, with mitigating and aggravating factors).  The respondent falsely represented to two suppliers that, to his knowledge, the client had not received any prior cash advances against her MBTA settlement, and the suppliers relied on those representations in deciding to advance funds to the client.[5]  Irrespective of the validity of the

---

[4] On the view we take of the case, we do not address the respondent's arguments concerning the validity of the cash advance arrangements between the respondent's clients and the suppliers.

[5] We presume that the respondent was not of the view, at the time the misrepresentations were made, that the proposed

transactions between the client and the suppliers, the respondent violated his ethical obligation not to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."  Mass. R. Prof. C. 8.4 (c), 426 Mass. 1429 (1998).  See Matter of Barrett, 447 Mass. at 464 ("engaging in conduct that is dishonest or deceitful, or that adversely reflects on an attorney's fitness to practice, will suffice" to constitute violation of rules of professional conduct).

The same is true of the respondent's failure to comply with his client's written instructions concerning the MBTA settlement proceeds, and his own obligations to ELF once the proceeds were received.  The hearing committee concluded that the respondent's failure to notify ELF was the result of "extreme[] careless[ness] to the point of gross negligence," and was not "a conscious decision."  That conduct is proscribed by the disciplinary rules.  The respondent's postdisbursement rationalization concerning the validity of the underlying ELF transaction with the client does not excuse his own prior misconduct.  Indeed, if there had been any dispute about the proper disbursement of the settlement funds, both the rules of professional conduct and the agreement with ELF would have precluded disbursement to the client until the dispute was resolved.

Turning to the question of sanction, we consider whether the two-month suspension imposed by the single justice "is markedly disparate from those ordinarily entered by the various single justices in similar cases."  Matter of Gustafson, 464 Mass. 1021, 1023 (2013), quoting Matter of Alter, 389 Mass. 153, 156 (1983).  "[W]e give 'no special deference' to the determination of the single justice [as to disciplinary sanction] but both we and the single justice give 'substantial deference' to the board's recommendation."  Matter of Sharif, 459 Mass. 558, 563 (2011), quoting Matter of Doyle, 429 Mass. 1013, 1013 (1999).

We agree with the single justice's observation that the respondent's misconduct was more serious than failure promptly to notify a third party and deliver funds to satisfy a lien, and that more than a public reprimand is required.  See Matter of Kelleher, 26 Mass. Att'y Discipline Rep. 281 (2010) (stipulation to public reprimand for failing to notify third party and deliver funds to satisfy lien, where mitigating circumstances,

transactions were "illegal."  Otherwise, the petition for discipline might well have charged additional misconduct.

including restitution, present); Matter of Hughes, 25 Mass. Att'y Discipline Rep. 277 (2009) (same). We also agree that the respondent's misconduct is less egregious than that in Matter of Phillips, 24 Mass. Att'y Discipline Rep. 547 (2008). In that case, the attorney was suspended for three months based on an intentional breach of fiduciary duty and violation of a court order to create a trust (with the proceeds of a settlement) for the benefit of a client's child, by facilitating the client's access to the child's funds. It is also less egregious than that in Matter of Rafferty, 21 Mass. Att'y Discipline Rep. 550 (2005), where the single justice accepted a stipulation to a three-month suspension for an attorney who violated a court order to preserve settlement funds for the benefit of a minor by paying one-half of the funds to the minor or to her landlord for household expenses, and later lost track of the funds. Although restitution of the full settlement amount was made in both Phillips and Rafferty, unlike in those cases, in this case, no violation of a court order was involved.[6]

The hearing committee, as the sole judge of credibility, declined to credit the respondent's explanations for his misconduct, and found no factors to weigh in mitigation of sanction. Its findings were adopted by the board and the single justice. With respect to factors in aggravation, the board and the single justice adopted the hearing committee's findings concerning the respondent's substantial experience in personal injury law and practice in general, and his experience with litigation funding suppliers in particular. See Matter of Luongo, 416 Mass. 308, 311-312 (1993). The same was true of his apparent lack of insight with respect to the ethical obligations imposed by the rules of professional conduct, see Matter of Clooney, 403 Mass. 654, 657 (1998), lack of remorse, and lack of candor in the disciplinary proceedings. See Matter of Eisenhauer, 426 Mass. 448, 457, cert. denied, 524 U.S. 919 (1998). Considering all of these factors, we are satisfied that a two-month suspension is not markedly disparate from the sanctions imposed in comparable cases.

Finally, we note that the respondent filed a motion to dismiss in the county court. He contends that the motion should have been allowed, because bar counsel did not address in the county court the points he raised regarding the board's findings. Although bar counsel did not respond expressly to the respondent's motion, she did not concede that there was error.

---

[6] We acknowledge that, after the disciplinary proceedings commenced, the respondent reached a settlement with ELF.

The single justice independently reviewed the record and concluded that the board's findings were supported by substantial evidence.  See Matter of Barrett, 447 Mass. at 459-460; Matter of Segal, 430 Mass. 359, 364 (1999).  Although a party risks much by failing to respond to an argument raised by an opponent, that failure does not equate necessarily with victory for the opponent.

Conclusion.  The order of the single justice, imposing a two-month term suspension, is affirmed.

So ordered.


The case was submitted on the papers filed, accompanied by a memorandum of law.

David M. Hass, pro se.